## Ellars v. Ellars
*[Cite as 7 AOA 397]*

Case No. 89AP-992
Franklin County, (10th)
Decided October 9, 1990

Joseph I. Tripodi, Joseph I. Tripodi Co., L.P.A., and Robert P. DiRosario, for Appellant.

Pamela J. Bertram and Marya C. Kolman, Luper, Wolinetz, Sheriff & Neidenthal, L.P.A, for Appellee.

REILLY, P.J.

This is an appeal from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations. Plaintiff, Michelle T. Ellars, assigns the following assignments of error:

"1. The trial court committed prejudicial error and abused its discretion in awarding custody to appellee solely for the reason that appellant refused to enter into a judicially suggested joint custody order.

"2. The court committed prejudicial error and abused its discretion in failing to divide the property of the parties in an equitable and lawful manner.

"3. The trial court committed prejudicial error and abused its discretion in failing to grant appellant sustenance alimony and failing to consider the factors set forth in the Ohio Revised Code 3105.10(B)."

The parties were married on April 17, 1982. They had one child, Amy Ellars, who was born on April 20, 1984. Plaintiff filed a complaint for divorce on May 20, 1988 seeking alimony and child custody from defendant, Douglas L. Ellars. Defendant filed a counterclaim.

There was a trial before the domestic relations court. The court rendered a decision on July 28, 1989, including findings of fact and conclusions of law. The court journalized its judgment entry and decree of divorce on August 15, 1989.

In its entry, the trial court terminated the parties' marriage, awarded sole custody of Amy to defendant, ordered the payment of child support by plaintiff to defendant, and divided the marital property. Whereupon, plaintiff filed a notice of appeal.

In the first assignment of error, plaintiff contends that the trial court abused its discretion by awarding sole custody of Amy to defendant because plaintiff refused to agree to the joint custody arrangement that was suggested by the court.

As the Supreme Court reaffirmed in *Miller v. Miller* (1988), 37 Ohio St. 3d 71, the abuse of discretion standard is applicable to the determination of this issue. The court noted that the term "abuse of discretion" connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable.

The trial court is required to consider the requisite factors set forth in R.C. 3109.04. This statute provides, in pertinent part:

"(C) In determining the best interest of a child pursuant to this section, whether on an original award of custody or modification of custody, the court shall consider all relevant factors, including:

"(1) The wishes of the child's parents regarding his custody;

"(2) The wishes of the child regarding his custody if he is eleven years of age or older;

"(3) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;

"(4) The child's adjustment to his home, school, and community;

"(5) The mental and physical health of all persons involved in the situation."

The statute, however, does not change the basic text as "[a]bundant case law *** supports the time-honored standard that what is in the 'best interest of the child' should be the overriding concern in any child custody case. ***" *Miller, supra,* at 75.

Although the trial court did not explicitly address all of the factors in its journalized decision, the court wrote as follows:

"Both parents have actively sought the custody of the child, who is deeply loved by all the members of her family. Particularly, the maternal grandmother, Mrs. Tinker, has attempted to exert a great deal of control over the child, in part, at least, to the exclusion of the father. Plaintiff, the mother, has demonstrated a certain lack of maturity in choices concerning her personal life, finances, *and in her attitude toward this litigation,* acting in ways tending to create concern about her ability to act in the best interest of her daughter. Given the relevant provisions of O.R.C. 3105.04, the best interest of Amy M. Ellars will be served if she is placed in the permanent custody of the defendant." (Emphasis added.)

The trial court's oral decision is a sufficient analysis of the custody issue. In the decision, the trial court first noted that it was not bound by either the psychological testimony presented or its prior determination with respect to the temporary order issued. The court further noted that it was bound by the best interest of the child standard and factors in R.C. 3109.04(C). The court admitted that this was an extraordinarily difficult case because both parents loved their daughter and it would be hard to distinguish between them on this ground. The court then added:

"Having determined that, both from my own observations of this case during the pre-trial period as well as from my review of Dr. Tarpey's examination, I have made continuous efforts to attempt to assist the parties in reaching some sort of an accommodation that would, in fact, serve both the interests of Michelle and the interests of Doug and, most significantly of course, the interests of Amy, who, although I have never seen Amy, I surely feel as though I know her well. Those attempts

on my part have been met with abject failure and, therefore, I have no choice -- no choice but to pick between the unpickable.

"***

"Now, why do I have to do this? Well, I have to do this because the parties have abdicated their responsibility to their own child and have been unwilling to put aside their own needs and their own feelings long enough to do two things; protect Amy, and protect themselves. But instead, now they have handed this matter over to me and said: You pick between these two folks when it's not possible, necessarily to do so.

"So, I look for guidance to the Ohio Revised Code and it tells me that I have to consider these five factors, a couple of which are clearly not relevant in this case, but the first of those factors is to consider the wishes of the child's parents regarding the child's custody. Well, in this case, since this is a custody contest, it's clear that both parents wish the child to be in their custody, although I will note for the record that in the process of negotiations the preferred resolution of this problem expressed to me from counsel for the Defendant on behalf of her client was a joint custody arrangement, but the -- but the Plaintiff clearly is interested in a sole custody arrangement and that is her wishes." (Tr. 187-189.)

The court discussed the other statutory factors. The court stated that, due to the child's age, her wishes were irrelevant. The court then discussed the child's interaction and interrelationship with the parties. The court said it gave little weight to the evidence of parental misconduct presented. The court said it gave great weight to the "*** parties' *** willingness to set aside their own interests for the interests of the child and that, really -- really, is what this is all about." (Tr. 190.)

The court indicated that Amy was well-adjusted and said:

"*** I think we can attribute the fact that she has dealt with this trauma fairly well to the fact that she had two good parents, both of whom love her, both of whom care about her; but one of whom is insisting on winning this case." (Tr. 191.)

As to the mental and physical health of the parties, the court said:

"*** That's the last of these factors and that basically is where -- is where it's going to have to come down here, I suppose, in trying to make the distinction between the indistinguishable.

"For many days, many hours of testimony, I have had direct observations in this courtroom of these parties, of their behavior, of their attitude, of their willingness to express a spirit of caring for the child as opposed to a spirit of possessing the child." (Tr. 191.)

The court concluded that, based on the "slimmest of distinctions," including how the parties conducted themselves in this matter, permanent custody should be awarded to defendant.

Concerning visitation, the court added:

"Due to the fact that there -- there has been such a -- well, let me say this: In the beginning of this case, as I was working with counsel in an attempt to resolve it, it was my intention, if I was placed in a position where I could not avoid making this custody determination, to work out as broad and flexible a visitation arrangement as possible, but I have now become so convinced that it is beyond Mrs. Ellars' ability to see the best interests of the child in a spirit of compromise that I -- I can't trust these folks to work together to the degree necessary to do any sort of unique or unusual sort of visitation award. And I wish I could. I wish I were signing a joint custody degree, but I can't do that." (Tr. 192.)

The court then granted visitation to plaintiff on an every other weekend schedule.

Plaintiff contends that the trial court's decision shows that it punished her for not agreeing to a joint custody agreement. Plaintiff maintains that other portions of the record support this conclusion. For instance, during the trial, the court stated:

"[THE COURT:] I want this on the record.

"I am going to tell you something, Michelle. I don't know, I have been telling your lawyer this and I am going to tell you right now. If this is not a joint custody case, you are in significant danger of being an every other weekend visiting parent. Do you understand that? Do you understand that?

"MR. DiROSARIO. You have to answer, Michelle.

"THE WITNESS. I don't understand why.

"THE COURT. You know something? It's up to me to determine why, but I am going to tell you why, because your immaturity, your petulance, your unwillingness to compromise in this matter indicates to me that your self-centeredness prevents you from thinking in terms of what is the best interests of your child." (Tr. 180.)

Further, the court stated:

"THE COURT. No, Mr. DiRosario, I am tired of the inability of your client to see that this is a joint custody case, that's what I'm tired of.

"I am going to order temporary custody be changed from the Plaintiff to the Defendant. The Plaintiff will have visitation every other weekend from Friday night at 6:00 o'clock to Sunday night at 6:00 o'clock, and every Wednesday from 4:00 to 6:00 p.m.

"The temporary child support will be terminated. Child support will be paid in the amount of $35.00 per week temporarily until we hear the rest of this matter, and we'll be back here in the 26th of June. "This is reality, Mrs. Ellars; this is reality." (Tr. 182.)

Plaintiff alleges that throughout the proceedings the trial court tried to impose a joint custody agreement on her. Plaintiff argues that this is contrary to R.C. 3109.04(A), which provides for voluntary joint custody plans. That statute provides, in pertinent part:

"The court may order that the parents have joint care, custody, and control of the children *only if both parents request joint custody and file a plan for joint custody pursuant to division (D)* of this section and if joint custody is in the best interest of the children. ***" (Emphasis added.)

Further, R.C. 3109.04(B)(2)(c), provides:

"The court shall terminate a provisional joint custody decree if either parent or the court itself makes a motion to terminate the provisional decree at any time prior to ninety days after the date of its issuance. ***"

See, also, *Blair v. Blair* (1986), 34 Ohio App. 3d 345 (holding that either parent may terminate joint custody if that parent concludes that it is no longer viable).

By contrast, defendant argues that it was appropriate for the court to consider the fact that plaintiff did not accept the court's "suggestion" of joint custody. Defendant argues that Dr. Tarpey, the psychologist who evaluated both parties, concluded that joint custody was in the best interest of the child. Further, defendant maintains that, since he was more selfless, the court could have concluded that he was better able to care for the child. Moreover, he contends that the court did not base its decision solely on this factor and therefore, the decision of the court should not be disturbed.

There is evidence in the record to indicate that the trial court abused its discretion. First, the trial court should not have considered the failure of plaintiff to sign a joint custody agreement. Second, it was an abuse of discretion to try to impose such an agreement on plaintiff and then apparently penalize her for not settling the case.

R.C. 3109.04(C) provides various mandatory factors which must be considered by the trial court. This was done by the court. The list of factors is not, however, exhaustive. Thus, the court may consider other factors which involve the issues in the case. The willingness to settle is not included in R.C. 3109.04(C). Further, R.C. 3109.04(A) provides that a court may not impose a joint custody arrangement on the parties unless they agree.

There was an abuse of discretion by considering plaintiff's refusal to agree to joint custody. The disposition of one parent to sacrifice for a child is a relevant factor in the custody determination, as defendant contends. Nonetheless, if the court is allowed to consider nonagreement as a factor in its best-interests-of-the-child analysis, such an approach would be adverse to the policy included in R.C. 3109.04.

Thus, the trial court abused its discretion by trying to require plaintiff to accept joint custody and by considering the failure of plaintiff to agree to joint custody as a material factor in the court's decision.

Plaintiff's first assignment of error is well-taken.

In the second assignment of error, plaintiff alleges that the trial court abused its discretion by failing to divide the marital property in a fair and equitable manner. Aside from some personal property and items that were not assigned a fair market value, due to a lack of evidence, the record shows the following marital estate:

### "MARITAL ASSETS

| | |
|---|---|
| Real Estate/4687 Henley Ave. | $52,900.00 |
| Pension Fund | 1,624.87 |
| Household Goods & Furnishings | -0- |
| Pontiac Grand Am | 8,475.00 |
| | $62,999.87 |

### MARITAL DEBTS

| | |
|---|---|
| Mortgage/Real Estate/4687 Henley Ave | $31,280.69 |
| Pontiac Grand Am Automobile | |

| | |
|---|---|
| Loan | 8,371.02 |
| Dover/New Philadelphia CU Loan | 2,583.65 |
| Dover/New Philadelphia CU Visa | 1,346.96 |
| Bank One Check Overdraft | 203.15 |
| First Card Debt | 759.94 |
| Furrows Debt | 90.00 |
| | $44,635.41 |

*NET EQUITY*

| | |
|---|---|
| Assets | $62,999.87 |
| Liabilities | 44,635.41 |
| | $18,364.46 |

The trial court awarded plaintiff the Pontiac Grand Am, subject to the secured loan. Further, defendant was to pay plaintiff's credit. card. Defendant received the rest. As defendant concedes, the net award to plaintiff was $655.96. This is but four percent of the net equity of the marital assets.

Defendant defends this award on several grounds. He maintains that he paid $5,599.90 of marital debt pursuant to temporary orders for the benefit of plaintiff. There is no indication, however, that the court failed to consider this in dividing the marital property. And there is no evidence indicating that the court considered these payments part of the marital debt.

Further, defendant claims that he purchased the family home from plaintiff's family for $12,000 less than its fair market value and this debt owing to him was somehow discharged by the decree. This argument is not well-taken. Purchase of the home would be tantamount to a gift. There is no evidence in the record that there was a debt created between husband and wife.

R.C. 3105.18(B) includes factors which are to be considered in the division of marital property. *Cherry v. Cherry* (1981), 66 Ohio St. 2d 348. The division should be fair and equitable. *Id.* An equal division is only a starting point for the court. *Id.* Hence, equitable does not necessarily mean equal. *Kaechele v. Kaechele* (1988), 35 Ohio St. 3d 93, 96.

In allocating property between the parties, the trial court must indicate the basis for its award in sufficient detail to enable a reviewing court to determine whether the award is fair, equitable and in accordance with law. *Kaechele, supra*, paragraph two of the syllabus.

There is no indication in the court's decision why defendant was entitled to approximately ninety-six percent of the marital property. The disparity is not supported by the evidence.

Moreover, there is no explanation of why the entire pension plan was awarded to defendant. This is marital property. *Holcomb v. Holcomb* (1989), 44 Ohio St. 3d 128, syllabus. Defendant contends, after giving the house to him because of custody, there was no other property to give to plaintiff. There was a substantial asset, the pension, which could have been divided or given to plaintiff.

Plaintiff's second assignment of error is also well-taken.

In the third assignment of error, plaintiff argues that the court failed to grant her sustenance alimony.

R.C. 3105.18(B) lists factors for the trial court to consider in its determination of alimony. "Sustenance alimony is based on need, and the trial court must have latitude to examine all the evidence before it awards an amount that is reasonable and equitable." *Kaechele, supra*, at 95.

As plaintiff conceded at oral argument, alimony was not really emphasized in this case. Plaintiff did not present evidence relating to the relevant statutory factors in R.C. 3105.18. Hence, the trial court did not abuse its discretion as to sustenance alimony.

Plaintiff's third assignment of error is not well-taken.

For the foregoing reasons, plaintiff's first and second assignments of error are sustained. The third assignment or error is overruled. The judgment of the trial court is reversed and remanded for further proceedings consistent with this opinion and in accordance with law.

*Judgment reversed and cause remanded.*

STRAUSBAUGH and YOUNG, J.J., concur.