OPINION
Defendant-appellant Jon Stevenson is appealing from a judgment of the trial court adopting a shared parenting arrangement for the parties' minor child. Stevenson contends that the trial court erred by establishing a shared parenting custody plan because the only basis for doing so was to punish the parties for failing to settle the case. He further claims that the trial court failed to consider the issue of the primary caretaker in determining the best interest of the child. Finally, he argues that the findings of fact made by the trial court are against the weight of the evidence.
We find no support in the record for the allegation that the trial court's decision to institute shared parenting in this case was motivated by any desire to penalize the parties. We further find that the trial court considered all relevant factors in determining custody, and that the decision was supported by the evidence.
Accordingly, the judgment of the trial court is Affirmed.
 I
Plaintiff-appellee Rachel Rusnak gave birth to a daughter, Ashley, on November 16, 1997. A paternity test indicated that Jon Stevenson was the father of the child. A complaint for custody was filed, and both parents filed motions seeking custody. Temporary orders were entered naming Stevenson as the residential parent and granting visitation rights to Rusnak.
A hearing was held with both sides presenting witnesses and extensive testimony on the issue of custody. Following the conclusion of the hearing, the trial court established a shared parenting arrangement with the parents alternating as residential parents every six months. Stevenson appeals.
 II
Stevenson's First Assignment of Error is as follows:
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT PUNISHED THE PARTIES [SIC] FAILURE TO AGREE TO JOINT CUSTODY BY ORDERING ITS OWN VERSION OF JOINT CUSTODY; SUCH CUSTODY BEING AGAINST THE BEST INTEREST OF THE CHILD.
Stevenson contends that the trial court erred by ordering joint custody. He claims that the only basis for the implementation of a shared parenting plan was the trial court's desire to punish the parties for failing to agree to a joint custody plan. In support of this argument, he refers us to a portion of the trial court's judgment entry, wherein the court stated that "[i]t is best for the child to clearly spell out the terms and conditions of the interaction between the mother and father until they can demonstrate the ability to communicate and cooperate as equals." Stevenson also cites Ellars v. Ellars
(1990), 69 Ohio App.3d 712, for the proposition that a trial court abuses its discretion by trying to require a party to accept joint custody and by considering failure of the party to agree to joint custody as a material factor in determining custody.
In Ellars, the Tenth District Court of Appeals found that the trial court had abused its discretion because it appeared that the trial court had awarded sole custody of a minor child to the father in an effort to punish the mother for failing to agree to a joint custody arrangement. Id., at 718-719. In that case, the facts in the record supported a finding that the trial court had indeed penalized the mother for her failure to settle the case.Id., at 718. In fact, the trial court clearly harangued the mother for her failure to compromise on the issue of custody, and brazenly informed her that she was in danger of losing custody if she did not agree to joint custody. Id.
Unlike the record in Ellars, there is no portion of this record leading us to conclude that the trial court's intent was to punish the parties rather than to create a custody plan that was in the child's best interest. Instead, a closer reading of the cited portion of the judgment entry indicates that the trial court was merely noting that Stevenson had repeatedly failed to follow court orders in regard to visitation, and that it was necessary to explicitly set forth the exact rights and responsibilities of the parties in order to avoid such problems in the future. Further, the judgment entry indicates that the trial court believed that a shared parenting plan was in the best interest of the child. In other words, unlike in Ellars, where the record suggests that the trial court preferred a shared parenting plan, but awarded custody to the father to punish the mother for not agreeing to the shared parenting plan preferred by the court, in the case before us, the trial court expressed an understandable desire to involve both parents, who obviously love their child, in the care, custody and control of the child, and the trial court has entered an order toward that purpose — not for the purpose of punishing either party.
We find no support for Stevenson's argument. Accordingly, the First Assignment of Error is overruled.
 III
Stevenson's Second and Third Assignments of Error state as follows:
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY NOT TAKING INTO ACCOUNT THE PRIMARY CAREGIVER OF THE CHILD, NAMELY THE DEFENDANT/APPELLANT/FATHER AND HIS RELATIONSHIP TO THE CHILD.
 THE TRIAL COURT PREJUDICIALLY ERRED BY NOT TAKING INTO ACCOUNT THE CHILD'S RELATIONSHIP WITH HER PATERNAL GRANDPARENTS AND THEIR PART IN SUPPORTING THE DEFENDANT/APPELLANT/FATHER, PRIMARY CAREGIVER OF THE CHILD.
Stevenson contends that the trial court, in determining custody, erred by failing to consider his relationship to the child and his role as the child's primary caretaker. He further alleges that the trial court also prejudicially failed to consider the paternal grandparents "as part of the extended family and caretakers of the child".[1]
The best interests of the child test governs custody determinations. The factors used in making such decisions are delineated in R.C. 3109.04(F). Although not specifically listed in R.C. 3109.04(F), the role of the child's primary caretaker is a factor warranting consideration because it "* * * bears on the child's interaction and interrelationship with his parents, as well as the child's adjustment to his home." In re Maxwell
(1982), 8 Ohio App.3d 302, 306. "* * * [W]e note that while the question of which parent has fulfilled the role of primary caretaker for young children is a very important consideration, it is by no means dispositive of the custody issue in and of itself."Knox v. Knox (Oct. 26, 1994), Champaign App. No. 94 CA 08, unreported. "Rather, it is one relevant factor which, along with all of the others, must be considered by the court." Id.
The trial court's order notes that Stevenson is capable of caring for the child, and that he has "sacrificed his time and money and energy for weeks and months to provide for his daughter." The court further noted that the child has "done well" while in Stevenson's care. The trial court found that the child has "done well while in the care of the father's relatives" and that Stevenson's family has assisted in providing for the child's care. The court was aware, and stated, that Stevenson was living with his parents.
Although the order does not specifically state that Stevenson acted as the child's primary caretaker, it is obvious that the court was aware of his status. It is clear from the order that the trial court was aware that Stevenson's family aided him in raising the child, and that it considered their interaction with the child. Therefore, absent affirmative evidence to the contrary, we presume that the trial court considered this factor as relevant to the issue of the child's best interest.
The Second and Third Assignments of Error are overruled.
 V
Stevenson's Fourth Assignment of Error is as follows:
 THE TRIAL COURT PREJUDICIALLY ERRED BY INCLUDING NUMEROUS FINDINGS IN ITS FINAL CUSTODY ORDER WHICH ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In this Assignment of Error, Stevenson objects to findings made by the trial court. He claims that findings made by the court in regard to the statutory factors set forth in R.C.3109.04(F)(1)(a)-(j) are against the weight of the evidence.
We begin our discussion of this argument with an analysis of the standard of review to be used in custody cases. With regard to review of custody matters, the Ohio Supreme Court has stated the following:
 The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct. (Citations omitted).
Miller v. Miller (1988), 37 Ohio St.3d 71, 74.
While a trial court's discretion in a custody modification proceeding is broad, it is not absolute, and must be guided by the language set forth in R.C. 3109.04. See Baxter v. Baxter (1971),27 Ohio St.2d 168, 172-173. In addition, the trial court's determination in a custody proceeding is, of course, subject to reversal upon a showing of an abuse of discretion. Id. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, citations omitted.
Stevenson contends that the trial court's findings regarding R.C. 3109.04(F)(1)(a) [the wishes of the child's parent regarding his care] show that the court began to "tilt in favor" of Rusnak on this issue by equating Rusnak's mental illness with "an insurance diagnosis given by [a clinical social worker]" suggesting that Stevenson suffered from "adjustment disorder with a combination of depression and anxiety." A review of the trial court's finding in regard to this factor does not support Stevenson's contention. The trial court merely noted that both parents requested that they be designated as primary legal custodian and residential parent of the child. The court also noted that each parent vigorously contested the other's fitness to be custodial parent. This finding is amply supported by the record.
We next turn to Stevenson's argument regarding the failure of the trial court to interview the child. In its findings, the trial court noted that it did not interview the child in chambers due to the age of the child. R.C. 3109.04(B)(1) provides that when determining the best interest of the child and in allocating parental rights, the court "* * * in its discretion, may and, upon the request of either party, shall interview in chambers any or all of the involved children regarding their wishes and concerns with respect to the allocation." R.C. 3109.04(F)(1)(b) then requires the court to consider the wishes and concerns of the child as expressed in the interview.
At first blush, Stevenson's argument appears to suggest that the trial court's mere statement that it did not conduct an in chambers interview of the child is itself prejudicial and against the weight of the evidence. Since the finding that no interview was conducted is accurate, we will construe this argument as alleging that since the trial court failed to interview the child, its findings regarding the best interest of the child are against the manifest weight of the evidence.
We note that Stevenson does not claim that he requested that the child be interviewed by the court; therefore, the trial court was not required to conduct the interview. Furthermore, since the child was under the age of two at the time of the hearing, any wishes expressed by the child would be of doubtful value. A Guardian ad Litem, appointed to represent the interests of the child, filed a report that was specifically considered by the trial court. That report indicated that the best interests of the child would be best served by a shared parenting arrangement. We conclude that the trial court did not abuse its discretion by failing to interview the child. Moreover, since the trial court did consider the best interests of the child, as conveyed by the GAL, we cannot say that its findings as to the best interest of the child was not supported by the evidence.
Next we turn to R.C. 3109.04(F)(1)(c), which requires the trial court to consider the "child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest." In this case, the trial court found that the child has a "loving and nurturing relationship with each parent." The court further found that the child "has benefited from her interaction with her parents and has done well while in the care of the father's relatives and the mother's friends."
Stevenson contends that the trial court "prejudicially demeans the primary caretaker father and primary caretaker paternal grandparents as `extended family' and balances this against the mother's `friends'." We do not view a reference to a child's grandparents as "extended family" as being demeaning; to the contrary, it is an apt description. Furthermore, we do not find it inappropriate that the trial court considered the child's interaction with Rusnak's friends versus Stevenson's family. The record indicated that Rusnak did not have any involvement with her family, but that she had quite a few friends who helped her with the child. The trial court's finding that Rusnak's friends are "appropriate and assist" her in providing care to the child is supported by the record. We conclude that the trial court's findings in this regard are not against the weight of the evidence.
The trial court next considered the child's adjustment to her home, as required by R.C. 3109.04(F)(1)(d). Stevenson complains that the trial court's finding in regard to this factor is incorrect because it: (1) prejudicially refers to his mother as a "day care provider," (2) fails to name Rusnak's roommate, who is an assistant county prosecutor known to the court, (3) does not name the friends who help Rusnak in raising the child, (4) "obliquely refers to the Paternal Grandmother Elaine Stevenson as `others [the father depends upon] who care for the child during the day," and (5) "prejudicially notes that [Rusnak] is unemployed and not yet receiving disability, but she is still somehow `quite capable of providing for the needs of the child'."
The evidence showed that Stevenson resides with his parents and that Rusnak resides in the home of a friend. The record supports a finding that the child is well-adjusted to, and well-cared for in, both homes and that both homes are appropriately equipped, and suitable, for a young child. The evidence also shows that Stevenson must rely upon a relative to provide day care services for the child and that his mother and father also help him with the child[2]. The mere fact that the order does not name Rusnak's friends is not prejudicial. The record supports a finding that she has a support group of friends, most of whom testified at the hearing, who are willing and able to give her any help that she might require raising the child. There is nothing in the record to suggest that any of Rusnak's friends present a danger to the child. Finally, the record shows that, as the trial court noted, Rusnak was attempting to find employment cleaning houses and businesses, and that she in fact did have several regular customers for whom she cleaned.
We conclude that the trial court's finding that the child is well adjusted to the homes and friends and/or family of the parents is adequately supported by the record. The next factor considered by the trial court was R.C. 3109.04(F)(1)(e) [mental and physical health of all persons involved in the situation]. The trial court made the following findings in regard to this factor:
 The father is physically healthy and able to care for his child. The father has had demonstrated periods of mental difficulties, but is able to function adequately in caring for himself and his child. With assistance, the father is able to properly maintain himself and his environment.
 The mother has also had episodes of mental difficulties in the past; but as with the father, she is able to maintain a normal lifestyle with the assistance of medication and support of counseling.
Stevenson contends that the trial court's finding prejudicially favors Rusnak because it "uses an insurance diagnosis [made in regard to him] and equates this with the Mother's documented mental illnesses and episodes of violence." He also argues that there is no evidence to support a finding that he required any mental assistance.
The transcript reveals that Stevenson presented the testimony of his counselor, who testified that she diagnosed him as suffering from "adjustment disorder with depression and anxiety." The counselor also testified that Stevenson would need counseling, but no other intervention for this problem. Given that his own witness testified to a personality disorder and a need for assistance in dealing with it, we conclude that the trial court's finding is not against the weight of the evidence.
In regard to Rusnak's mental condition, we note that the evidence reveals that she suffers from a serious personality disorder condition known as Bipolar Affect Disorder. The record reveals that in Rusnak the condition generally manifests itself as depression. There is evidence that Rusnak, at least once, had to seek emergency medical treatment for the condition. However, the record is also replete with testimony that the condition can be treated with medication and with counseling. It is clear from the record that Rusnak has been diligent with her treatment and is conscientious about the need to continue with her treatment. The record also reveals that the treatment is effective for Rusnak. The record also supports a finding that Rusnak's condition will not interfere with her ability to parent. Based upon the record, we conclude that the evidence supports the findings of the trial court.
The trial court also found that Stevenson was not likely to honor and facilitate visitation and companionship rights approved by the court. R.C. 3109.04(F)(1)(f). The record, including Stevenson's own testimony, supports this finding. The court further found that Rusnak was compliant with the court's orders. Again, this finding is supported by the record.[3]
The trial court also found that neither parent was in arrears on child support, and that neither had, or planned, to establish a residence outside of Ohio. R.C. 3109.04(F)(1)(g) and (j). These findings are not against the manifest weight of the evidence.
R.C. 3109.04(F)(1)(h) mandates that a trial court must determine whether either parent has been convicted of, or pleaded guilty to, any offense involving abuse or neglect of the child or any member of the subject household. The trial court stated that it found no such evidence. Stevenson claims that this finding is against the weight of the evidence, because Rusnak has abused the child.
Stevenson testified that the child returned from an unsupervised visitation with Rusnak with "severe bruises on her face, her head, her arms, [and] legs." He further testified that Rusnak had put her thumb in, and her hand over, the child's mouth in order to stop its crying. Also, he claimed that, when the child was hospitalized for illness, Rusnak had bent or damaged a vein shunt in the child's head by jerking the child. His mother, Elaine Stevenson, testified that she had observed Rusnak jerking the baby, damaging the shunt, and failing to feed or diaper the child. Rusnak denied all of these allegations.
Stevenson's aunt, who provides day care for the child, and his sister both testified that they found Rusnak's interaction with the child to be appropriate. There was ample evidence in the record to support a finding that Rusnak is a caring and loving parent, and that her behavior with her child, and others, is appropriate. In sum, there is sufficient evidence in the record to refute the claims that Rusnak cannot adequately parent the child, and there is no evidence to corroborate the allegations of abuse made by Stevenson and his mother. Given the record before us, and the fact that the trial court had the opportunity to observe the witnesses, we cannot say that the trial court abused its discretion by choosing not to credit the allegations of Stevenson and his mother.
Finally, the trial court found that Stevenson had interfered with visitation. R.C. 3109.04(F)(1)(i). Stevenson contends that because the trial court did not make a similar finding about Rusnak, it prejudicially favored her. Again, it is clear from the record that Stevenson frequently denied or altered visitation whenever he had a whim to do so. The record also supports the trial court's finding that Stevenson "is likely to further control and insist on directing all visitation between [Rusnak] and [the] child on his terms." We note that the record indicates that Stevenson is so controlling in regard to the child's care that he would not allow Rusnak to even feed, or give liquid to, the child during visitation. Stevenson required signatures on hand-made forms before he would turn the child over for visitation. There is no evidence that Rusnak was anything but compliant with the court's orders. Therefore, we find that the trial court did not abuse its discretion in making this finding.
Although not raised by Stevenson on appeal, we note that pursuant to R.C. 3109.04(F)(2), when considering shared parenting, the trial court must also evaluate the following:
 (a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;
 (b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;
 (c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnaping by either parent;
 (d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;
 (e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.
Although this statutory section is not specifically cited in the trial court's order, it is apparent from a reading of the order that these factors were considered. In fact, the trial court gave thoughtful consideration to all of the statutory factors relevant to this case. The record before us reflects that the trial court's judgment was based upon a substantial amount of competent and credible evidence and was therefore within the trial court's sound discretion.
We have reviewed in excess of twelve hundred pages of transcript in this case. We find that the trial court's decision to institute a shared parenting agreement does not constitute an abuse of discretion. Accordingly, Stevenson's Fourth Assignment of Error is overruled.
 VI
All of Stevenson's Assignments of Error having been overruled, the judgment of the Clark County Court of Common Pleas, Juvenile Section, is Affirmed.
WOLFF and YOUNG, JJ., concur.
[1] Although not specified in his Assignment of Error, in his argument Stevenson claims that Rusnak suffers from "severe mental and physical illness," and that she has abused the child; factors that he argues make a consideration of the primary caretaker especially crucial. We will address the issue of Rusnak's mental illness and alleged abusive behavior in connection with the Fourth Assignment of Error, to which they are more pertinent.
[2] It should be noted that the trial court's order does not refer to Stevenson's mother as the day-care provider. Instead, it merely notes that the day-care provider used by Stevenson is appropriate. Furthermore, Stevenson fails to state how he is prejudiced by the fact that the judgment includes Stevenson's mother in the category of "others" upon whom Stevenson relies for help in caring for the child during the day. We do not find that this statement, which is accurate based upon the record, is prejudicial.
[3] In this portion of the argument, Stevenson contends that the "trial court became aware of one emotional outburst by the Father overheard by Court personnel and this apparently caused personal animus to arise in the Trial Court and prejudice the case of a distraught father versus a mentally and physically ill mother." We can find no support for this allegation in the record.