[Cite as *Lucas v. Byers*, 2021-Ohio-246.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## LAKE COUNTY, OHIO

| | | |
|---|---|---|
| JASON C. LUCAS, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | CASE NOS. 2020-L-010<br>2020-L-049<br>2020-L-050 |
| LINDSAY N. BYERS, | : | |
| Defendant-Appellant. | : | |

Appeals from the Lake County Court of Common Pleas, Juvenile Division, Case No. 2016 CV 00054.

Judgment: Affirmed.

*Kenneth J. Cahill,* Dworken & Bernstein Co., L.P.A., 60 South Park Place, Painesville, OH 44077 (For Plaintiff-Appellee).

*Joseph G. Stafford* and *Nicole A. Cruz,* Stafford Law Co., LPA, 55 Erieview Plaza, 5th Floor, Cleveland, OH 44114 (For Defendant-Appellant).

*Cory R. Hinton,* Hanahan & Hinton, LLC, 8570 Mentor Ave., Mentor, OH 44060 (Guardian ad litem).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Lindsay N. Byers ("mother"), appeals from the judgment of the Lake County Court of Common Pleas, Juvenile Division, designating Jason C. Lucas ("father") sole residential parent and legal custodian of the parties' minor son, D.L. She also appeals the trial court's judgment denying her motion to modify visitation. We affirm the judgments of the trial court.

{¶2} In January 2016, father filed a complaint requesting allocation of parental rights and responsibilities. The matter proceeded to hearing which resulted in a January 18, 2017 order naming mother residential parent for school purposes. On May 11, 2018, father moved the trial court to designate him the sole residential parent and legal custodian of the minor child. The parties filed voluminous motions subsequent to father's May 2018 filing. Ultimately, on December 7, 2018, father filed an ex parte motion for immediate temporary sole residential placement and legal custody. A pretrial conference was held on December 12, 2018, at which the parties and the guardian ad litem ("GAL") indicated they had reached an agreement regarding custody. And, an agreed judgment entry was subsequently filed.

{¶3} After mother's counsel had withdrawn, new counsel filed a motion to vacate the previous agreed entry, which was granted on March 19, 2019. The matter then proceeded to a 13-day bench trial on, inter alia, father's May 11, 2018 motion. Following trial, the trial court issued an order which found the circumstances had changed since the initial allocation of parental rights; the court additionally concluded D.L.'s best interests would be served by designating father the sole residential parent and legal custodian. The court also ordered mother to have supervised visitation with D.L. Mother appealed and on December 14, 2020, this court released its judgment and opinion affirming the trial court. *See Lucas v. Byers*, 11th Dist. Lake Nos. 2020-L-010, 2020-L-049, and 2020-L-050, 2020-Ohio-6679. Mother subsequently filed an application for reconsideration, which this court granted. We now proceed to address mother's six assignments of error in light of that determination. The first assigned error provides:

2

{¶4} "The trial court erred as a matter of law and abused its discretion in granting father's motion to designate father sole residential parent and legal custodian and in its allocation of parental rights and responsibilities."

{¶5} Under this assignment of error, mother first argues father failed to demonstrate a change of circumstances arising since the prior decree. Mother contends father simply relied upon redundant allegations of medical abuse and falsification of medical records, which the trial court had previously rejected. The record, however, does not support mother's claim.

{¶6} A judgment involving the allocation of parental rights and responsibilities will not be disturbed save an abuse of discretion. *Wren v. Tutolo,* 11th Dist. Geauga No. 2012-G-3104, 2013-Ohio-995, ¶8. The phrase "abuse of discretion" is one of art, connoting judgment exercised by a court, which does not comport with reason or the record. *Gaul v. Gaul*, 11th Dist. Ashtabula No. 2009-A-0011, 2010-Ohio-2156, ¶24. In determining whether the trial court has abused its discretion, a reviewing court is not to weigh the evidence, but, rather, must determine from the record whether there is some competent, credible evidence to sustain the findings of the trial court. *Clyborn v. Clyborn,* 93 Ohio App.3d 192, 196 (3d Dist.1994). In rendering its decision, the trial court is in the best position to observe the witnesses, "which cannot be conveyed to a reviewing court by a printed record." *Miller v. Miller,* 37 Ohio St.3d 71, 74 (1988). Moreover, given these points, we are "'guided by the presumption that the trial court's findings were indeed correct.'" *Id.; see also Foxhall v. Lauderdale,* 11th Dist. Portage No. 2011-P-0006, 2011-Ohio-6213, ¶26, quoting *Bates-Brown v. Brown,* 11th Dist. Trumbull No. 2006-T-0089,

3

2007-Ohio-5203, ¶18 ("decisions involving the custody of children are 'accorded great deference on review.'").

{¶7} R.C. 3109.04(E)(1)(a) contains various provisions pertaining to modification of parenting plans. R.C. 3109.04(E)(1)(a) states that:

{¶8} The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

{¶9} (i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.

{¶10} (ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

{¶11} (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

{¶12} In *Janecek v. Marschall*, 11th Dist. Lake No. 2013-L-136, 2015-Ohio-941, this court held that a trial court modifying a prior decree allocating parental rights and responsibilities pursuant to R.C. 3109.04(E) is required to make a specific finding that a change of circumstances had occurred. *See id.* at ¶18. The Ohio Supreme Court has held that the requisite change of circumstances "must be a change of substance, not a slight or inconsequential change." *Davis v. Flickinger*, 77 Ohio St.3d 415 (1997). "In determining whether a change of circumstances has occurred, the trial court has great

4

latitude in considering all evidence before it." *Makuch v. Bunce*, 11th Dist. Lake No. 2007-L-016, 2007-Ohio-6242, ¶12, citing *In re M.B.,* 2d Dist. Champaign No. 2006-CA-6, 2006-Ohio-3756, at ¶9.

{¶13} In this matter, the previous, January 18, 2017 order was premised upon various pleadings, the first of which was father's motion to allocate parenting rights and responsibilities. In that motion, father asserted mother was denying him visitation and preventing him access to D.L.'s medical records. Although the magistrate's decision discussed, at length, the parties' disagreement regarding potential food allergies and each party's differing approach towards this issue, nothing in that decision or the trial court's decision suggests the concerns raised by father in the subsequent, May 2018 motion were merely reiterations of those in the previous litigation. While there may have been some overlap in the concerns father voiced in each motion, the concerns advanced in the May 2018 pleading (and each subsequent motion filed) related to allegations which post-dated the January order. In this respect, father's allegations in the underlying matter are not redundant and thus cannot be deemed res judicata.

{¶14} Next, mother asserts father failed to establish a change of circumstances because he did not submit sufficient documentation that mother had made abuse allegations against him. She further contends father's allegation that mother subjected the child to excessive and unnecessary medical visits was unsubstantiated and against the weight of the evidence.

{¶15} Initially, testimonial evidence was adduced that mother had leveled abuse allegations, ranging from emotional, physical, medical, as well as sexual abuse of the parties' son. And, the report submitted by the GAL, Attorney Cory Hinton, listed multiple

collateral sources, including medical professionals, to whom mother had related the allegations. Counsel for mother had an opportunity to cross-examine the GAL and Dr. Deborah Koricke, a clinical and forensic psychologist appointed by the court to do a custody evaluation. Nothing in their testimony indicated the abuse allegations, which had occurred and persisted since the previous litigation, did not occur. We therefore conclude father was not obligated to provide formal documentation of mother's allegations and the trial judge was entitled to assess the credibility of the witness' testimony, as well as the reports submitted into evidence, in its change-of-circumstance analysis.

{¶16} Evidence was adduced that the child was being seen by a sexual-abuse counselor and mother had made numerous calls to children's services; notably, however, no investigation was ever initiated. In March 2018, after staying with father, mother alleged the child's buttocks was red and D.L. purportedly told her that father put a pen in his anus. According to the GAL, mother reported the alleged abuse to police. After an investigation, during which a rape test was administered, the prosecutor declined to pursue the matter. Mother also asserted she has noticed sexualized behavior from the child; she claimed the child will not keep his pants on and places objects around his privates. According to Amanda Eggert of the Cleveland Rape Crisis Center, however, D.L. did not act out in a sexualized manner.

{¶17} Mother asserted she has continued to take D.L. to various doctors because she noticed anal inflammation. She believed this is related to, inter alia, father's failure to adhere to a diet consistent with D.L.'s food allergies. In particular, on the evening of May 2, 2018, D.L. returned from weekend-parenting time with father and he was bleeding from his anus. Mother stated that the next day she took the child to the emergency room

which led to a follow-up treatment with Dr. Joshua Friedman, a pediatrician. Dr. Friedman testified that the child had inflammation of the intestine, which could cause rectal bleeding; he also indicated sexual abuse could not be ruled out. Dr. Friedman stated, however, his observations did not specifically implicate father in any wrongdoing.

{¶18} During his meetings with mother, the GAL stated mother repeated her concerns that father was harming the child by either feeding him allergens and/or sexually abusing him. Mother additionally had concerns that father was physically abusing D.L. As a result, the GAL noted mother continued to seek significant medical treatment and enroll the child in therapy/counseling. Mother also related she hired a private investigator to look into what foods father was feeding the child.

{¶19} Father asserted that, prior to the January 2018 order awarding mother custody, mother attempted to have him arrested for physically abusing their son. According to father, she engaged in other actions which were designed to suggest he was not a fit father. After the January 2018 entry, father noted mother's allegations escalated; she began claiming he was sexually abusing or harming their son by sodomizing the child with a pen. After being investigated, no charges or further attention was given to the allegations by authorities. Father opined that mother's actions are a continuing effort to keep him out of the child's life. He expressed his concern that mother will persist with similar allegations. Indeed, he related to Dr. Koricke that he feared mother might flee the court's jurisdiction with the child. The evidence, in general, supported much of father's observations because, over time, mother's actions had become progressively more serious; to wit, mother has accused him of neglect, endangering D.L., physical

7

abuse, medical neglect, and finally sexual abuse. None of her allegations, however, were confirmed.

{¶20} Father told Dr. Koricke that mother had taken D.L. to over 200 doctor's appointments. On cross-examination, he clarified that rather than "appointments," he meant "encounters," e.g., appointments as well as phone consults and the like. Regardless, father expressed frustration and concern regarding the volume of medical appointments to which mother subjected D.L.; he pointed out that, in his estimation, mother was attempting to condition D.L. to fear him.

{¶21} The GAL ultimately concluded shared-parenting is not in D.L.'s best interest. He stated:

{¶22} An important aspect of my initial investigation was to try and determine if I could find evidence that Father was in fact physically abusing the child, purposefully feeding him foods which would harm him, and/or sexually abusing the child. * * * I was unable to find any substantial evidence other than what Mother could testify to. While I cannot rule anything out, I did not discover any collaborating evidence that Father was harming [D.L.] physically, by the administration of certain foods, or by sexually abusing him.

{¶23} * * *

{¶24} The condition of [D.L.'s] anus has been a point of heightened conflict in this case. Since [D.L.], who just turned four, is not at daycare/preschool four days a week and with paternal grandfather once a week on Fridays, there are unlikely additional individuals assisting [D.L.] using the restroom. It has not been brought to my attention during the interview with the daycare/preschool provider or based on my review of the daycare/preschool's records that there are any issues with [D.L.'s] anus. I recently spoke with [D.L.'s] pediatrician who had just got done examining [D.L.] for a checkup the day I spoke with him. Dr. Norr[, the pediatrician,] did not express any concerns over [D.L.'s] anus. What Dr. Norr was able to confirm is that [D.L.] is currently allergy free. Thus, it is clear that from a factual perspective, there appears to be some closure as to one of the major points of contention between the parties (i.e. [D.L.'s] anus being irritated as a result of sexual abuse or eating incorrect foods).

8

{¶25} The GAL went on to recommend that father be designated D.L.'s legal custodial parent.

{¶26} Similarly, Dr. Koricke submitted her report to the court and was extensively cross-examined on the same. Defense counsel utilized the report as an exhibit; at the end of trial, however, counsel withdrew the exhibit. Still, the record reflects that Dr. Koricke opined, with reasonable psychological certainty, that father should be named the primary and sole custodian of the child.

{¶27} "R.C. 3109.04 does not define 'changes in circumstances'; however, courts have generally held the phrase to note 'an event, occurrence, or situation which has a material and adverse effect upon a child.'" *Lindman v. Geissler,* 171 Ohio App.3d 650, 2007-Ohio-2003, ¶33 (5th Dist.) citing, *Rohrbaugh v. Rohrbaugh,* 136 Ohio App.3d 599, 604-605 (7th Dist.2000). In *In re R.A.S.*, 12th Dist. Warren No. CA2011-09-102, 2012-Ohio-2260, the court was faced with similar facts. The court stated:

{¶28} The record is clear that Mother engaged in a pattern of accusing Father, and those associated with him, of sexually abusing R.A.S., and that the accusations increased since Father's 2009 custody motion was denied.

{¶29} As previously stated, Father presented evidence of Mother's accusations, and that each allegation was deemed unsubstantiated. Mother has taken R.A.S. to Children's Medical Center on four separate occasions, and on each occasion, R.A.S. was subjected to a physical exam. Mother has made 13 referrals to Greene County Children's Services, alleging in each that Father, or those associated with him, sexually abused R.A.S. The child has been subjected to four different forensic interviews in which he was questioned about the sexual abuse allegations. Mother has also made six allegations to the Yellow Springs Chief of Police that Father was molesting R.A.S. Mother also took R.A.S. to three different child psychologists for therapy related to the sexual abuse allegations. None of the county agencies, law enforcement, physical exams, forensic interviews, or psychological evaluations have led to Father being

9

charged for sexually abusing R.A.S., and instead, Mother's allegations were found to be unsubstantiated on each occasion.

{¶30} This court is not saying that a parent is wrong to stalwartly protect its child if there is a belief the child is the victim of sexual abuse. Quite conversely, a parent is encouraged to seek the help of agencies, medical experts, or law enforcement to investigate allegations of sexual abuse. However, this case is particularly unique in that Mother continued to accuse Father of sexually abusing R.A.S. after multiple initial allegations went unsubstantiated and no charges were brought. There are at least 30 different documented allegations against Father, and on each occasion, Mother knew that the allegations were unsubstantiated. This case is so extreme that at the time of trial, Green County Children Services had an open investigation against Mother, alleging emotional maltreatment of R.A.S. based on Mother involving the child in repeated unsubstantiated allegations of sexual abuse.

{¶31} The unsubstantiated allegations have a greater impact on the change of circumstances determination beyond the mere fact that Mother has made them. Mother's pattern of making the claims is compounded by the fact that she continually involves R.A.S. in the process of investigating the allegations. R.A.S. has been subjected to several invasive exams and interviews, and the impact of such repetitive investigations on a young child is patently detrimental. Moreover, Mother would speak about the sexual abuse allegations to other people in the community, and would speak of the adult-issues surrounding the investigations in the presence of R.A.S.

{¶32} * * *

{¶33} The fact that Mother has made these accusations has also impacted how she and Father relate to one another. "Increased hostility between the parents and the frustration of visitation are factors which can support a finding of a change in circumstances." *In re Nentwick,* 7th Dist. [Columbiana] No. 00 CO 50, 2002-Ohio-1560, ¶39, citing *Davis v. Flickinger,* 77 Ohio St.3d 415, 416–417 (1997). *In re R.A.S., supra,* at ¶20-26.

{¶34} The court went on to conclude there was an adequate change in circumstances justifying a modification.

{¶35} Further, in *Canada v. Blankenship*, 3d Dist. Marion No. 9-18-16, 2018-Ohio-4781, a mother alleged her ex-husband sexually abused her daughter from a prior

10

relationship as well as the parties' biological two-year-old son. The mother consequently withheld visitation of the parties' biological child. Authorities later found the claim unsubstantiated. The father filed a motion to change custody due to his concern the parties' son would suffer mental and emotional damage due to mother's continued accusations in the presence of the child. The trial court found a change of circumstances justifying modification. The Third Appellate District agreed. In addition to the mother's "willful interference" with the father's parenting time, the court emphasized the mother's continual allegations of abuse created a change of circumstances. The court pointed out: "Other courts have held that the making of a false sexual abuse accusation has been deemed to be "'(in and of itself) a 'factual circumstance.' The making of such a false accusation, subsequent to an initial award of custody, is clearly a 'change' in circumstances irrespective of any detrimental impact on the minor child. Such change frequently deprives both the child and the noncustodial parent of visitation.'"" *In re Russell*, 4th Dist. Washington No. 98CA525, 1999 WL 606781, \*5 (Aug. 4, 1999), quoting *Beekman v. Beekman*, 96 Ohio App. 3d 783, 788-89 (4th Dist. 1994). "'Moreover, we do not believe it requires any great leap in logic to find that a false accusation of sexual abuse by one parent against another always has a detrimental impact.'" *In re Russell, supra* at \*5. *Canada, supra*, at ¶36.

{¶36} Returning to the instant matter, the trial court, in its judgment entry designating father the sole residential parent and legal custodian, made the following findings germane to mother's arguments:

{¶37} Since the prior court order, an allegation arose, in March 2018, that Father put a pen in the child's anus. Mother responded by taking the child to numerous doctor's specialists, and a rape crisis center. Mother testified that the child came home from a visit with Father on

11

May 2, 2018 bleeding from the anus. Mother cleaned the child and then nursed the child to sleep. The next morning at about 10:00 or 11:00 am, Mother responded by taking the child to the Cleveland Rape Crisis Center. Mother took the child also on May 3, 2018, at about 6:30 pm, to Hillcrest Hospital for a sexual assault kit examination. The hospital reported to the police. Mother testified that "on a whim" she filed a petition for Domestic Violence in the Court of Common Pleas Domestic Relations Division in Lake County Ohio. The Petition for Domestic Violence Civil Protection Order was denied. The police investigated. No charges were filed. Lake County Human Service investigated. No charges were substantiated. Mother continued to take the child to doctors, counselors and therapists.

{¶38} When Mother first went to see Dr. Koricke (the forensic custody evaluator) in June 2018, her complaints were that Father was mentally, physically, emotionally and sexually abusing the child. Mother believed that Father was emotionally abusing the child and medically abusing the child. Mother's claim of medical abuse was because Father was allegedly providing the child foods that the child was allergic to. During Mother's testimony, when asked if she thought Father was physically and sexually abusing the child, Mother replied "I don't know." Further, Mother did not know if Father was a fit custodia[l] parent. But when she was questioned about the shared parenting plan that she filed she testified that Father was a fit custodia[l] parent.

{¶39} In light of the evidence, recommendations of both Dr. Koricke and the GAL, as well as the analogous case law, we cannot conclude the trial court abused its discretion in finding a change of circumstance occurred between the entry of the prior order and the current order.

{¶40} Next, mother asserts the trial court erred as a matter of law and abused its discretion by failing to consider the best interest factors set forth under R.C. 3109.04(F)(1). We do not agree.

{¶41} The factors found in R.C. 3109.04(F)(1) include: (a) the wishes of the child's parents regarding the child's care; (b) the wishes or concerns of the child as expressed to the court; (c) the child's interaction and interrelationship with her parents and any other

person who may significantly affect the child's best interest; (d) the child's adjustment to her home, school, and community; (e) the mental and physical health of all persons involved; (f) the parent more likely to honor and facilitate visitation and companionship rights approved by the court; (g) whether either parent has failed to make all child support payments; (h) whether either parent previously has been convicted of or pleaded guilty to any criminal offense; (i) whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court; and (j) whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶42} In its judgment entry, the trial court listed the best-interest factors and made the following findings in relation to the same:

{¶43} a) Father would like to become the sole residential parent. Mother would like to share parenting. Mother testified to this and during closing arguments the Court questioned her again to ensure that was her desire.

{¶44} b) The Court did not interview [D.L.] in camera. However[,] the child has a Guardian ad Litem and the Guardian ad Litem has made recommendations to the Court as and for [sic] the best interest of [D.L.]

{¶45} c) The evidence established that Father and paternal grandfather spend a lot of time interacting with [D.L.] in their community in Independence[,] Ohio. The child has no health issues, no allergies and is not currently seeing any mental health professionals.

13

{¶46} d) The evidence established that [D.L.] has adjusted noicely [sic] to Father's home. He is integrated into the community. He has friends, goes to day care/school, plays tee ball and soccer.

{¶47} e) There was no evidence presented to suggest that Father has any physical or mental health issue that would prevent him from providing appropriate care for [D.L.] However, the testimony of Dr. Afsarifard calls Mother's mental health into question. Dr. Afsarifard stated that Mother has been traumatized by the events and feels she is the victim. Therefore, she needs therapy…intensive therapy.

{¶48} f) Mother has been held in contempt for failure to honor or facilitated parenting time.

{¶49} g) Father was the child support obligor and his child support is current. Even though the child has been with the Father for over one year there has been no order for the Mother to pay child support.

{¶50} h) There was no evidence presented to suggest that either parent has ever been convicted of any crime or engaged in any activity that resulted in harm to a family member or child.

{¶51} i) See "f" above.

{¶52} j) There was no evidence presented to suggest that either parent is planning to establish a residence outside the state of Ohio.

{¶53} After taking into consideration the GAL's recommendation, the trial court determined a modification of the residential parent was in D.L.'s best interests and the harm likely to be caused by a change of environment is outweighed by the advantages of

14

the change of environment to the child. The trial court's conclusion is reasonable and supported by the record. We discern no abuse of discretion.

{¶54} Mother's first assignment of error lacks merit.

{¶55} Her second assignment of error provides:

{¶56} "The trial court erred as a matter of law and abused its discretion by designating father the residential parent and legal custodian of the minor child."

{¶57} As discussed above, the trial court did not err in finding a change of circumstances since the prior decree; nor did it err in concluding the modification of the prior order was in the best interest of the child. Mother contends, under this assignment of error, however, that the trial court's determination vis-à-vis R.C. 3104.09(E)(1)(a)(iii) was error. Specifically, she asserts the record does not support the trial court's conclusion that "[t]he harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child." *Id.* We do not agree.

{¶58} The trial court found that, since the previous decree, mother had subjected D.L. to numerous and frequent visits with medical and/or psychological professionals. She took him to the Cleveland Rape Crisis Center, but both medical and psychological witnesses (Joshua Friedman, M.D.; Dr. Deborah Koricke, Ph.D.; and Farshid Afsarifard, Ph.D.) stated there was no definitive evidence of sexual abuse. And there was no evidence presented, other than that offered by mother, that father engaged in any pattern of abuse, sexual or otherwise, with D.L. From this, the trial court could conclude that the repeated counseling and medical tests/check-ups would cause him distress, anxiety, and harm; particularly where, as here, no sexual abuse was confirmed or medically corroborated.

15

{¶59} With respect to R.C. 3109.04(E)(1)(a)(iii), the record reveals that the trial court addressed and considered the advantages and disadvantages of leaving the minor child with mother or placing him with father. The record shows D.L. has been developing well, physically and socially, since being placed with father and there have been no incidents of excessive medical or psychological intervention. The record indicates that mother had an ongoing interest in undermining D.L.'s perception of and relationship with this father. Although father also showed animosity towards mother, his attitude was ostensibly the result of his frustration with mother's pattern of abuse allegations and her arguable attempts to damage, if not sever, his relationship with D.L. We recognize that the emergency change in custody from mother to father likely distressed and saddened the child, at least at first. Any radical shift in a young child's paradigm and routine would be reasonably expected. Still, in light of the surrounding circumstances, as well as the child's young age at the time of the change of custody (three years and approximately four months), the evidence militates in favor of the trial court's conclusion. Thus, we cannot say that the trial court abused its discretion when it concluded the harm likely to be caused from the change in environment was outweighed by the advantages.

{¶60} Mother's second assignment of error lacks merit.

{¶61} Mother's third assignment of error provides:

{¶62} "The trial court erred as a matter of law and abused its discretion by denying mother's motion to disqualify the Guardian ad Litem and allowing the GAL to submit his report after the commencement of trial."

16

{¶63} Under her third assignment of error, mother contends the trial court erred and abused its discretion by denying her motion to disqualify the GAL and allowing him to submit his report after the commencement of trial. We do not agree.

{¶64} Initially, in support of this argument, mother's counsel cites to the transcript of the hearing wherein he objected to the GAL seeking an extension to submit his report. There is nothing at this point in the proceedings indicating she moved to disqualify the GAL and mother does not specifically direct this court's attention to the record where any motion was filed. Mother's counsel identifies the point in the proceedings where he objected to the extension; to wit:

> {¶65} [I]t is unfair that the guardian participates, hasn't done a report, and then you grant him an extension, I think through September, before [he] reports. So we are starting trial without any sort of report from the guardian, which is somewhat unfair, but, nevertheless, he can't converse with witnesses once we start trial because that is unfair. He can't do it - - he can't go outside of these court proceedings, do any sort of further investigation or discuss matters with witnesses of evidence that had already come before the Court * * *.

{¶66} The court granted the motion for separation of witnesses and asked father's attorney for a response regarding the extension and the issue with contacting witnesses. Father's attorney responded:

> {¶67} Well, Your Honor, this is the first I have heard of this. I would just say that the guardian should be able to do his duties pursuant to Rule of Superintendence 48. Certainly anything in his report will be subject to [mother's counsel's] examination, as well as mine. If, for some reason, in these proceedings [mother's counsel] believes something has been included in the report or in his testimony, he may recall a witness, if he wishes, if that is appropriate, but I think a blanket type of order would unduly hamper the guardian in this matter.

{¶68} The court ultimately denied counsel's request that the GAL have no further contact with witnesses because such contact would be consistent with his duties. Mother

17

does not specifically take issue with this point. Still, our review of the record reveals counsel filed a motion to disqualify, which the trial court denied.

{¶69} Mother contends the trial court erred in denying her motion to disqualify the GAL because he failed to comply with Ohio Sup.R. 48 and he did not submit his report until after the commencement of trial. We do not agree.

{¶70} Ohio Sup.R. 48.03 sets forth responsibilities for guardians ad litem. It mandates that the GAL represent the best interest of the child; maintain independence, objectivity, and fairness with parties; have no ex parte communications with the court; and make reasonable efforts to provide the court with an informed recommendation as to the child's best interest. Mother asserts the GAL improperly "conspired" against her with the assistance of father, his counsel, and Dr. Koricke. Mother asserts the GAL engaged in ex parte communications with the trial court that caused her prejudice. Hence, she concludes the GAL was neither fair nor impartial and the court erred in failing to disqualify him.

{¶71} Preliminarily, this court has held that the Rules of Superintendence, "'are not the equivalent of rules of procedure and have no force equivalent to a statute. They are purely internal housekeeping rules which are of concern to the judges of the several courts but create no rights in individual defendants.'" *Habo v. Khattab*, 11th Dist. Portage No. 2012-P-0117, 2013-Ohio-5809, ¶84, quoting *State v. Gettys*, 49 Ohio App.2d 241, 243, (3d Dist.1976). Further, in *Miller v. Miller*, 4th Dist. Athens No. 14CA6, 2014-Ohio-5127, the court observed: "we have generally refused to conclude that a guardian *ad litem's* failure to comply with Sup.R. 48(D) constitutes grounds for reversal." (Emphasis sic.) *Miller*, *supra*, at ¶17.

18

{¶72} With the foregoing in mind, "[t]he role of the guardian ad litem is to investigate the ward's situation and then to ask the court to do what the guardian feels is in the ward's best interest." *In re Baby Girl Baxter*, 17 Ohio St.3d 229, 232 (1985).

{¶73} In his report, the GAL stated that, at the beginning of December 2018, Dr. Koricke frantically contacted him. She communicated that she would be recommending father be granted custody and mother have supervised visitation. She explained she was extremely concerned that mother may harm or abscond with the child upon learning the content of her recommendations. Thus, she indicated her report should not be released until the child was in father's custody.

{¶74} The GAL stated immediate relief could be obtained via an ex parte motion. He further asserted he "wanted to verify whether or not the concerns Dr. Koricke was bringing up (i.e.[,] Mother fleeing and/or hurting the child) were backed up by her report. This was certainly not an attempt by the GAL to 'orchestrate,' 'manipulate,' or 'embellish' facts. It was simply a way to determine whether or not the doctor's concerns warranted the filing of an ex parte motion." After the GAL confirmed the concerns, Dr. Koricke asked him if an affidavit would suffice to substantiate the issues for the court because she did not have her report fully complete. The GAL stated he felt a sworn statement would be sufficient. Dr. Koricke requested the GAL to draft an affidavit based upon the information she provided. The GAL stated he did so in the child's best interest. The GAL further stated:

{¶75} Dr. Koricke made changes to the affidavit, on her own without input from the GAL, and she emailed it to him. The GAL then distributed the affidavit to Plaintiff's attorney. However, the GAL also sent the affidavit to Defendant's counsel the same day. While the GAL had conversations with Plaintiff's attorney about Dr. Koricke's thoughts,

19

the GAL also had conversations with Defendant's counsel about Dr. Koricke.

{¶76} While the timing of these communications was slightly staggered as a result of Dr. Koricke's concerns, the GAL took extra precautions to ensure that he was maintaining independence, objectivity, and fairness.

{¶77} In light of the foregoing, as well as the surrounding circumstances, we conclude the trial court did not err in denying mother's motion to disqualify the GAL. The GAL was acting in D.L.'s best interest and, while mother suffered prejudice by having the child removed and losing parenting time, we decline to hold that prejudice was unfair in light of the totality of the evidence.

{¶78} Next, mother takes issue with the GAL's failure to have a final report prepared at the commencement of trial. While being cross-examined, the GAL stated he had sought an extension of filing his report and that deadline had not passed as of that time. Had counsel for mother believed the late filing was inherently and unfairly prejudicial, he could have advanced such an argument and sought a continuance of the hearing. No such argument or motion was proposed. While mother may believe seeking a continuance was somehow problematic, she failed to advance any such argument in her brief. And, in her application for reconsideration, she asserts prejudice because she lost potential parenting time owing to the delay; her assertion, however, is merely hypothetical, i.e., there is nothing to suggest time would be reinstated, especially in light of the substantive findings and conclusions of the trial court's final judgment. We therefore discern no error in the court's decision to permit the GAL to file his report after commencement of the hearing.

{¶79} Mother's third assignment of error lacks merit.

{¶80} Mother's fourth assignment of error provides:

{¶81} "The trial court erred as a matter of law by violating the appellant's fundamental due process rights."

{¶82} Mother argues her procedural due process rights were violated because the court required her to proceed before father submitted his evidence and because the court permitted the GAL to submit his report late.

{¶83} First, there is nothing in the record indicating the trial court compelled mother to present cross-examination testimony prior to father submitting his evidence. It would appear that counsel for mother either preferred to proceed in this fashion or was comfortable acquiescing to this manner of witness presentation. Regardless, mother was on specific notice of the basis of father's claims surrounding the issue of re-designating custody. And, if something occurred during father's presentation of evidence that mother deemed new, unique, or improper, there was nothing preventing her from either seeking re-cross or re-calling a witness, and the timing of the GAL's report does not affect these points. Mother was on notice of the issues that were being tried and was given an ample opportunity to be heard.

{¶84} Mother's fourth assignment of error lacks merit.

{¶85} Mother's fifth assignment of error asserts:

{¶86} "The trial court erred as a matter of law and abused its discretion in denying mother's motion for new trial."

{¶87} Mother asserts the trial court erred in failing to grant her a new trial because the court required her to proceed before father and because certain ex parte

21

communications between the GAL, father's counsel, and the trial court created prejudicial irregularities in the proceeding. We do not agree.

{¶88} As just discussed, we identify nothing prejudicially irregular in the manner in which evidence was presented. Mother's counsel did not object and, in light of other safeguards, e.g., re-crossing or re-calling of witnesses if counsel felt it necessary, we deem the court's procedure fair and consistent with due process.

{¶89} With respect to the ex parte communication, we understand that the GAL and Dr. Koricke arguably should have notified counsel for both parties regarding their intention to recommend an emergency custody award to father. Still, the matter was tried to the bench; counsel for mother skillfully cross-examined both the GAL and Dr. Koricke. In light of both the GAL's and Dr. Koricke's roles, the former as the child's advocate and the latter a neutral court-appointed expert, the court was able to weigh the facts and testimony to determine whether anything untoward had occurred in the course of its receipt of their recommendations. The court assessed the totality of the evidence and concluded the actions of these individuals, while potentially irregular, was not unfairly prejudicial to mother's rights. Mother's argument therefore lacks merit.

{¶90} Finally, mother contends the trial court should have granted a new trial because its judgment was against the manifest weight of the evidence. Given our disposition of mother's first and second assignments of error, we conclude this argument is moot and without merit.

{¶91} Mother's fifth assignment of error is not well taken.

{¶92} Mother's final assignment of error provides:

22

{¶93} "The trial court erred as a matter of law by denying mother's motion to modify visitation."

{¶94} Mother contends the trial court erred in overruling her motion to modify visitation. She contends that the trial court disregarded her completion of an intensive outpatient program as ordered by the court. She claims the court improperly entered judgment without a hearing and that, in light of her compliance, modification of visitation was in the child's best interest.

{¶95} In its judgment, the trial court noted that mother failed to attach anything to her affidavit (which accompanied her motion) indicating she had completed the intensive outpatient program; the court further noted that neither party requested a hearing on mother's motion. And, because the motion was filed a mere two weeks after the court's December 31, 2019 judgment re-designating father as residential and custodial parent, it concluded that "significant progress could not have been made with these parties in that period of time." Under the circumstances, we perceive no abuse of discretion.

{¶96} Mother's final assignment of error lacks merit.

{¶97} For the reasons discussed in this opinion, the judgments of the Lake County Court of Common Pleas, Juvenile Division, are affirmed.


MARY JANE TRAPP, P.J.,

TIMOTHY P. CANNON, J.,

concur.

23