**[Cite as *Pheister v. Pheister*, 2020-Ohio-3007.]**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Kevin Pheister, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 19AP-672 |
| v. | : | (C.P.C. No. 17DR-3052) |
| Robi Pheister, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on May 19, 2020

**On brief:** *Darryl O. Parker,* for appellant.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

NELSON, J.

{¶ 1} Robi Pheister failed to appear at the (previously postponed) trial in her divorce case. According to her lawyer, she had taken a medication that prevented her from driving, and she "didn't have anyone who could bring her to trial." *See* Appellant's Brief at 6 (mirroring the trial record in failing to reflect any effort by Ms. Pheister or her counsel to summon a cab, Uber, Lyft, or other means of transportation). Her lawyer did not ask directly to delay the trial date on this occasion, at least so far as the trial transcript shows, and does not appear to have objected formally to the court's proceeding without her (although the Judgment Entry/Decree of Divorce does say that Ms. Pheister's "request for a continuance was denied"). And while Ms. Pheister now appeals the decision of the domestic relations court to go ahead without her, she points to nothing to suggest that the result of the court's rather straightforward division of property would have been different had she made it to court. After reciting a bit of the background, we will affirm.

{¶ 2}    The trial date took some time coming.  Kevin Pheister filed a complaint for divorce from Robi Pheister on August 16, 2017.  The matter was continued several times. Ms. Pheister's lawyer filed a motion for a continuance on November 15, 2017, seeking "time to settle."  The parties filed a joint motion for a continuance on January 5, 2018, in order "to obtain additional information."  The trial court set a date of July 17, 2018 for a "final contested trial."  June 11, 2018 Amended Case Management Order.  A subsequent court order set a new "final contested trial" date of September 11, 2018.  July 27, 2018 Management Order.

{¶ 3}    The trial court granted the motion of Ms. Pheister's initial lawyer to withdraw as counsel on September 7, 2018, four days before trial as then scheduled. Her new lawyer filed a notice of appearance, a request for discovery, and a motion for temporary order seeking "[s]pousal support" and "[p]ayments of debts and/or expenses" on December 2, 2018.  A magistrate dismissed the motion without prejudice on January 8, 2019 for failure to prosecute, as Ms. Pheister failed to appear at the hearing on the motion.

{¶ 4}    On March 25, 2019, the court set a new trial date of May 21, 2019.  On May 16, 2019, Ms. Pheister's lawyer sought a continuance, citing the conflict of being "in [an] ongoing trial."  The trial court granted Ms. Pheister her continuance and scheduled a new trial date of June 24, 2019.  *Id.*

{¶ 5}    On that date, Mr. Pheister, his lawyer, and Ms. Pheister's lawyer appeared for trial, which had been set for 1:30 p.m.  Ms. Pheister did not show.  June 24, 2019 Tr. at 3-4.  When asked at 2:42 p.m. where Ms. Pheister was, her lawyer explained:

> My client, I believe, is still at home, Your Honor.  She sent me a text message maybe -- it was before 1:30 -- it was a little bit before 1:30, that she had a panic attack.  She had to take medication for which she cannot drive on; and she did not, at that point and when I spoke to her maybe about 30 minutes ago, have anyone that could bring her to the courthouse.

*Id.*

{¶ 6}    The trial court responded: "Okay.  Thank you.  Let the record reflect that this is set for contested trial.  This case is ancient, and I intend to proceed today with final hearing."  *Id.* at 4-5.  With Mr. Pheister about to take the stand, Ms. Pheister's lawyer then asked whether he would have opportunity to cross-examine the witness; the court assured him that he would, and he responded, "Oh, okay.  I was just wondering.  I got it."  *Id.* at 5.

{¶ 7} Mr. Pheister testified, answering questions posed by his lawyer and by the trial court concerning the parties' assets and debts and related exhibits. Ms. Pheister's lawyer cross-examined Mr. Pheister regarding his income, but then conceded to the trial court that the subject was "irrelevant" because Ms. Pheister had "not made a counterclaim requesting anything, nor are there children." *Id.* at 31. His only other questions for Mr. Pheister concerned what use Ms. Pheister had for a $2,800 sewing machine ("just random, you know, purses, quilts, things like that") and confirming that a consolidation loan taken out by Mr. Pheister covered debt only in his name. *Id.* at 32-33.

{¶ 8} The trial court granted the divorce on September 9, 2019. In the decree, the trial court stated that Ms. Pheister had "failed to appear" at trial and that her lawyer had "requested a continuance on behalf of his client"; the court had "noted the case was extremely dated, and [Ms. Pheister's] request for a continuance was denied and the matter proceeded to hearing." September 9, 2019 Judgment Entry/Decree of Divorce at 1.

{¶ 9} The court split personal property between the parties based largely on who possessed what, but the court awarded Ms. Pheister the marital residence because it had been "her separate, pre-marital property." *Id.* at 2, 3. Mr. Pheister was awarded the Corvette and the Harley, along with significant debts attached to them, and he also got the twenty-year-old Dodge Ram. *Id.*; Tr. at 25. Ms. Pheister got the 2019 Dodge Ram and its associated debt, and an insurance settlement held in trust for $6,585.55 was ordered to be "equally divided between the parties." Decree at 3. The trial court ordered the parties to produce financial statements concerning their retirement accounts so that it could "equalize the marital portions," and each party was ordered to hold the other harmless on debts held in their names, including the vehicle and consolidation loans. *Id.* at 3-4. The decree noted that it had been "approved" by Mr. Pheister's lawyer, but that there had been "no response" when "submitted on 07-01-2019" to Ms. Pheister's lawyer. *Id.* at 6.

{¶ 10} Appealing to us, Ms. Pheister asserts one assignment of error: "The trial court abused its discretion when it denied appellant's request for [a] continuance." Appellant's Brief at 6.

{¶ 11} " 'Ordinarily, the doctrine of waiver precludes a litigant from raising an issue for the first time on appeal.' " *Burwell v. Hardesty Village Home Owners Assn.*, 10th Dist. No. 19AP-151, 2020-Ohio-1466, ¶ 34, quoting *S & P Lebos, Inc. v. Ohio Liquor Control*

*Comm.*, 163 Ohio App.3d 827, 2005-Ohio-5424, ¶ 12 (10th Dist.). Here, because the decree recited that Ms. Pheister's lawyer did in fact request a continuance (gleaned perhaps off the record, or through some aspect of the lawyer's demeanor not ascertainable from the transcript), and absent any argument from Mr. Pheister to the contrary, we will consider her appeal on that basis.

{¶ 12} *State v. Unger*, 67 Ohio St.2d 65, 67-68 (1981), provides a non-exhaustive set of factors for a court to consider when asked for a continuance. "In evaluating a motion for a continuance, a court should note, *inter alia*: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." *Id.* On an appeal, *Unger* requires us "to apply a balancing test, thereby weighing the trial court's interest in controlling its own docket, including facilitating the efficient dispensation of justice, versus the potential prejudice to the moving party." *Fiocca v. Fiocca*, 10th Dist. No. 04AP-962, 2005-Ohio-2199, ¶ 7, citing *Unger*, 67 Ohio St.2d, at 67. "The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." *Unger* at 67.

{¶ 13} Ms. Pheister contends that when the *Unger* factors are applied, "it is apparent that the [trial] court did act in an unreasonable, arbitrary and unconscionable manner." Appellant's Brief at 8. She asserts that, because she "did not ask for a lengthy continuance, the [trial] court could have ordered the parties in the next day if it desired and the Appellant would have appeared." *Id.* at 8-9 (also admitting uncertainty as to whether the court "had room on its docket" to accommodate such a plan). That characterization perhaps overstates the specificity of whatever continuance was desired, if not voiced, and its premise that the trial court, Mr. Pheister, and his lawyer all had their calendars free for the next day may not be accurate. Nor, given Ms. Pheister's previous failure to appear at the hearing on her motion for temporary spousal support, is it entirely clear that she would have accommodated the hearing date she now suggests in retrospect.

{¶ 14} Noting that only one witness testified at the hearing, Ms. Pheister argues that the trial court made "no mention on the record regarding inconveniences to the litigants, witnesses or opposing counsel." Appellant's Brief at 9. But neither did her trial counsel. And "*Unger* does not suggest that information will always be available about each of these factors or require a court to assign particular weight to any one factor." *Musto v. Lorain Cty. Bd. of Revision*, 148 Ohio St.3d 456, 2016-Ohio-8058, ¶ 23. Furthermore, *Unger* describes this factor as "inconvenience to litigants, witnesses, opposing counsel *and the court*," the interests of which Ms. Pheister's brief does not assess. *Unger*, 67 Ohio St.2d, at 67 (emphasis added). The trial court's unwillingness to delay the case in light of how "ancient" it was suggests that continuing the case might have complicated the court's docket. This factor does not weigh much in Ms. Pheister's favor.

{¶ 15} Ms. Pheister acknowledges that the case had been delayed at her behest earlier, although she argues that she had "a legitimate reason" for her previous requests and that by her count only two of four continuances in the case were attributable solely to her or her lawyer. Appellant's Brief at 9, 7. That she had sought and received continuances in the matter before weighs somewhat against her on this record.

{¶ 16} She also asserts that there was "absolutely no reason for the court to believe that [she] was being untruthful when she stated she * * * couldn't make it to court because of the medication she took." *Id.* at 9. We do not conclude, nor did the trial court, that Ms. Pheister's failure to appear was designed as dilatory or her excuse contrived. But by her lawyer's account, Ms. Pheister was physically able to attend court. The case was not called for roughly an hour and ten minutes after its scheduled start time, and Ms. Pheister expressed her driving concerns to her lawyer half an hour or so before the judge inquired of her whereabouts. Tr. at 4. Yet apparently neither she nor her lawyer sought to arrange for any alternate transportation. Moreover, her lawyer said that she had taken the medication just "a little bit" before the hearing's scheduled 1:30 start time, but she seems not to have set off for court by that point. *Id.*

{¶ 17} These *Unger* factors, on balance, do not signal that the trial court abused its discretion here, and Ms. Pheister's appeal suffers from a more basic deficiency. The "balancing test" requires us to weigh "the trial court's interest in controlling its own docket, including facilitating the efficient dispensation of justice, versus the potential prejudice to

the moving party." *Fiocca*, 2005-Ohio-2199, at ¶ 7, citing *Unger*, 67 Ohio St.2d, at 67. Yet Ms. Pheister fails to identify any prejudice she suffered as a result of the trial going forward without further delay. Her lawyer made no such argument (or proffer) to the trial court at the time, and Ms. Pheister does not attempt an explanation of prejudice here either.

{¶ 18} Rather, Ms. Pheister simply asserts that it was an abuse of discretion for the trial court to proceed "without her having the opportunity to testify and explain to the court her position on the issues." Appellant's Brief at 6. She does not tell us what her position on the issues was, or how her expressing it to the trial court would have resulted in a different (and somehow better) outcome. In fact, she makes no criticism at all of the trial court's division of the parties' assets, or of any other result under the decree from which she appeals.

{¶ 19} Ms. Pheister got the house, with no division of its equity (even though Mr. Pheister testified that he had helped make mortgage payments "for over ten years," *see* Tr. at 17). Mr. Pheister got more of the cars, but he also acquired the corresponding debt. And in the end, although Ms. Pheister's lawyer was provided a draft of the decree well before its entry, Ms. Pheister made no objection to anything in it. *See* Decree at 6 (Ms. Pheister's lawyer gave "no response" to proposed decree after he received it more than two months before decree issued). Based on the record we find that the trial court by proceeding to judgment did not cause undue prejudice to Ms. Pheister, and she herself explains no such claim.

{¶ 20} We overrule Ms. Pheister's single assignment of error, and we affirm the judgment of the Domestic Relations Division of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BRUNNER, J., concurs.
LUPER SCHUSTER, J., concurs in judgment only.
_____