[Cite as *Gupta v. Sharan*, 2022-Ohio-4479.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Kanhaiya Lal Gupta,                              :

      Plaintiff-Appellee,                      :

                                          No. 22AP-81

v.                                               :          (C.P.C. No. 19DR-3788)

Sumana Sharan,                                   :          (REGULAR CALENDAR)

      Defendant-Appellant.                     :

---

D E C I S I O N

Rendered on December 13, 2022

---

**On brief:** *Nigh Law Group, L.P.A., Joseph A. Nigh* and *Tracy Q. Wendt*, for appellee. **Argued:** *Tracy Q. Wendt*.

**On brief:** *Charles Tyler, Sr.*, for appellant. **Argued:** *Charles Tyler, Sr.*

---

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

KLATT, J.

{¶ 1} Defendant-appellant, Sumana Sharan, appeals a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, that granted appellant and plaintiff-appellee, Kanhaiya Lal Gupta a divorce, divided the marital property, allocated parental rights and responsibilities, awarded no spousal support or child support, and ordered appellant to pay appellee's attorney fees. For the following reasons, we affirm.

{¶ 2} The parties were married in India on May 22, 2013. Two children were born of the marriage; both are still minors. On October 24, 2019, appellee filed a complaint for divorce and requested temporary orders. A hearing on the temporary orders was set for December 5, 2019. On December 4, 2019, appellant voluntarily left the marital residence

with the children. Appellee appeared at the December 5, 2019 hearing with counsel; appellant appeared pro se and requested a continuance to obtain counsel. The trial court granted the continuance and set a new hearing date. Following the December 5, 2019 hearing, the children resided with appellee and appellant had no further physical contact with them. On December 11, 2019, appellant, pro se, filed an answer and counterclaim for divorce. Appellant returned to India on December 18, 2019. Appellant obtained counsel in late January 2020. On January 31, 2020, the trial court appointed Laura M. Peterman as guardian ad litem ("GAL") for the children.

{¶ 3} Following several continuances, a hearing was held on the temporary orders. Appellee attended in person; appellant appeared via Zoom. Temporary orders, effective October 24, 2019, were issued on April 6, 2020, pursuant to which appellee was designated the temporary residential parent and legal custodian of the children and appellant was granted parenting time via telephone or other electronic communication. No child support or spousal support was ordered.

{¶ 4} On December 3, 2020, appellant requested a stay of the proceedings pursuant to an alleged travel ban between the United States and India due to the COVID-19 pandemic; appellee opposed the request. The trial court granted the stay on February 2, 2021. The stay was lifted on April 13, 2021.

{¶ 5} On March 30, 2021, appellee filed a motion requesting the trial court set a de facto termination date of marriage of December 4, 2019. On June 25, 2021, appellee filed a motion to compel appellant's response to appellee's discovery requests. Both motions were set for hearing, along with a status conference, on September 17, 2021. The trial court sua sponte continued the motion hearing/status conference until October 22, 2021.

{¶ 6} Appellee, appellee's counsel, appellant's counsel and the GAL appeared at the October 22, 2021 hearing; appellant did not attend. Appellee's de facto termination of date of marriage motion was heard first. Appellee testified and presented documentary evidence; appellant's counsel presented no witnesses or documentary evidence on appellant's behalf. Based on appellee's evidence, the trial court orally granted appellee's motion, finding a de facto termination date of marriage of December 4, 2019.[1]

---

[1] The trial court memorialized its oral ruling in a decision and entry filed October 27, 2021. In that decision, the trial court found the duration of the marriage to be from May 22, 2013 to December 4, 2019. Appellant does not assign error in the trial court's ruling.

{¶ 7}    Thereafter, the trial court addressed appellee's motion to compel.  Following a colloquy about the discovery issues, counsel and the court discussed scheduling of the final divorce hearing.  Upon the trial court's averment that "we know we are going to set this in a week or so for the divorce * * * [and appellant] is not going to be here," counsel for appellant indicated that he would not be available until the first week of November. (Oct. 22, 2021 Tr. at 44.)   The trial court asked if the hearing would be uncontested; appellant's counsel responded, "Correct."  *Id.* at 49.   Attempting to clarify counsel's statement regarding his availability, the court asked, "but you're saying wait until the first week of November?"  *Id.* Counsel replied, "Right."  *Id.* Counsel for appellee suggested a November 1, 2021 hearing date; counsel for appellant agreed to that date.   Counsel for appellant then inquired, "[w]ould you be opposed since it's uncontested, if I can attend by Zoom?"  *Id.* The trial court agreed and set the matter for final hearing on November 1, 2021.

{¶ 8}    On October 25, 2021, appellant filed a motion requesting that she be permitted to attend the November 1, 2021 hearing via Zoom.   Appellant asserted that she lived in India and was unable to travel to Ohio. The next day, appellant filed a motion requesting that the court appoint an interpreter.   Appellee opposed appellant's Zoom motion, arguing that such request contradicted the statements made by appellant's counsel at the October 22, 2021 hearing, i.e., that appellant would not be present for the November 1, 2021 hearing and that counsel wished to attend the hearing via Zoom.  The trial court denied the motion by entry filed October 27, 2021.  The court reasoned that appellant had failed to appear at the last three hearings, two of which were held via Zoom, that it had been advised at the October 22, 2021 hearing that appellant would not attend the final hearing, and that appellant had failed to comply with discovery requests. In a separate entry filed the same day, the trial court granted appellant's motion for an interpreter.

{¶ 9}    On October 29, 2021, the GAL filed her report.  On the same day, appellee filed a "Memo Contra Plaintiff to Defendant's Motion to Continue."  In this filing, appellee averred that on October 29, 2021, appellant filed a motion requesting a continuance of the final hearing set for November 1, 2021.  We note that appellant's motion for continuance is not part of the trial court record.

{¶ 10} The final hearing was held as scheduled on November 1, 2021. Appellee, his counsel, and the GAL attended in person. Counsel for appellant appeared via Zoom; appellant did not attend. At the outset, the trial court noted that an interpreter was present in the courtroom. The court averred that it granted appellant's request for an interpreter in case she appeared at the hearing. Noting appellant's absence, the court excused the interpreter from the proceedings.

{¶ 11} The court next addressed appellant's motion to continue the hearing.[2] As we noted above, this motion is not part of the trial court record; accordingly, we glean its contents through appellee's written response and the discussion held on the record at the hearing. The court first entertained counsel's argument that the GAL did not file her report seven days prior to the final hearing as required under the domestic court's local rules. The GAL responded that she had articulated her position for "well over a year" that she would not recommend that appellant be awarded custody of the children while she lived in India; accordingly, her recommendation that appellee be awarded custody "should not have come as a surprise to anyone." (Nov. 1, 2021 Tr. at 7.) The GAL further averred that the custody issue would be revisited if appellant returned to the United States. The GAL also asserted that that the seven-day local rule is not mandatory.

{¶ 12} The trial court then permitted appellant's counsel to argue the other points raised in the motion for continuance. To that end, counsel argued that appellee's counsel had failed to provide his trial notebook two weeks prior to the final hearing. Counsel also maintained that in contravention of the domestic court's local rules, the trial court failed to schedule a case management hearing after the stay was lifted. According to counsel, the trial court instead "decided to set a quick trial date for just over a week after the latest hearing." *Id*. at 9. Counsel acknowledged that he agreed to the November 1, 2021 hearing date, but asserted that after he told appellant about the hearing date, she informed him that her attendance was both logistically and financially impossible; thus, he filed the motion requesting that appellant be permitted to attend by Zoom.

---

[2] The court also addressed and denied appellant's motion requesting recusal of the trial judge. We note that this motion is not included in the trial court record. The record includes only appellee's October 29, 2021 response and the trial court's November 2, 2021 entry denying the motion. We further note that appellant has not assigned error in the trial court's ruling.

{¶ 13} The trial court reminded counsel that he had agreed to the final hearing date of November 1, 2021 and indicated that the divorce would be uncontested. The court averred that it agreed to permit counsel to appear via Zoom because "uncontested" in the context of this case meant "she is not coming * * * or I guess if you're coming, you're standing there and you're not making arguments or not presenting evidence to the contrary." *Id.* at 12.

{¶ 14} Following a lengthy discussion about the protracted procedural history of the case, the trial court denied the motion for continuance. In particular, the court noted that appellee was present and wanted the hearing to go forward. The court further averred, "I think [appellant] did have time to be here * * * and I think she really doesn't have any intention of being here from what we could tell from the last hearing." *Id.* at 29-30.

{¶ 15} Following a brief recess, counsel for appellant advised the court that he had received an email from appellant stating that she no longer wanted him to represent her; accordingly, on the advice of his malpractice insurer, he moved to withdraw as counsel. After the trial court granted that motion, counsel orally moved for a continuance to allow appellant to either obtain another attorney or to prepare to represent herself. The trial court denied that motion stating, "[t]he fact that she is firing you on the day of trial doesn't mean I have to give her [a] chance for another counsel." *Id.* at 32. Counsel thereafter took no further actions on appellant's behalf.[3]

{¶ 16} Following resolution of those preliminary matters, the hearing proceeded to the presentation of evidence. As relevant here, appellee testified that he and appellant were married in India on May 22, 2013 and share two minor children. During their marriage, appellant had an extramarital affair and filed several false police reports against appellee alleging domestic violence.

{¶ 17} Appellee further averred that over the course of the divorce proceedings, he had, through counsel, submitted several requests for discovery; appellant either did not respond to the requests at all or responded in an untimely manner. As a result, he had no information about appellant's current financial circumstances or employment status.

---

[3] Appellant's appellate counsel is the same counsel who represented her (prior to his dismissal) in the trial court proceeding.

**{¶ 18}** Regarding the allocation of parental rights and responsibilities, appellee testified that he agreed with the recommendation in the GAL's report that he be awarded sole legal custody of the children. Appellee averred that appellant had not been physically present to parent the children since she left for India in December 2019. Appellee disagreed with the GAL's recommendation that appellant be permitted FaceTime interactions with the children three times per week at designated times; appellee agreed to thrice-weekly FaceTime interactions but requested the flexibility to schedule them in accordance with the children's activities and his work schedule. Appellee further testified that appellant was convicted of disorderly conduct in May 2019 stemming from a shoplifting incident at a local mall. According to appellee, appellant committed the offense in the presence of the children, initially gave the arresting officers a false name and address, and did not provide them with appellee's contact information.

**{¶ 19}** Appellee also averred that he had lived in his current residence, a two-bedroom apartment, since December 2011 and planned to live there for the foreseeable future. The children were enrolled in age-appropriate schools and had friends in the community. Because appellant had lived in India for the past two years, appellee was solely responsible for the physical, emotional, and financial needs of the children. In addition, appellant had not contributed financially to the children's care. Appellee stated that appellant lived with her parents in India and had indicated in her court filings that she had no living expenses. Appellee testified that he did not want appellant to have parenting time with the children other than through FaceTime. In addition, he requested that the trial court order that if appellant returned to the United States, she would be permitted parenting time only if she had a permanent visa, as he feared that appellant would take the children back to India if she had only a temporary visa.

**{¶ 20}** Appellee further testified that he is currently employed at United Software Group, Inc. at an annual salary $101,000; he identified documentation substantiating that testimony. (Pl.'s Ex. 9.) In addition, he testified that he provides medical, dental, and vision insurance for the children, and pays tuition at the preschool where his youngest child is enrolled; he provided statements outlining those monthly insurance and tuition payments. (Pl.'s Exs. 10, 11.) He further averred that although he worked from home during the COVID-19 pandemic, he recently had been informed by his employer that he would return

to in-person work beginning in January 2022; he estimated his monthly childcare expense to be $2,000 following his return to in-person work. Because he knew nothing about appellant's current employment status, he requested that the court impute her salary at minimum wage. Appellee noted that appellant has a Bachelor of Science degree, has no physical or mental impairments, and is 28 years old.

{¶ 21} Appellee presented a child support worksheet which included his annual income of $101,000, annual insurance payments of $8,652, annual childcare costs of $3,900, imputation of $18,304 (minimum wage) to appellant, and request for monthly child support of $207.98 (Pl.'s Ex. 12.) Appellee requested that neither party be awarded spousal support. Appellee further testified that he had made all court-ordered payments for the GAL fees and would pay the GAL any outstanding fees associated with preparation of her final written report and corresponding in-court testimony.

{¶ 22} Regarding the division of marital assets and liabilities, appellee presented a balance sheet including valuations. (Pl.'s Ex. 14.) Specifically, the balance sheet indicated that the parties owned no real property. The balance sheet listed two properties appellee's parents purchased in India, both before and during his marriage, that were gifted to him and his siblings. The balance sheet also listed a Honda CR-V owned by appellee valued at $19,000 and upon which appellee owed $10,000. (Pl.'s Exs. 14, 15, 16, 17.) In addition, the balance sheet listed several bank accounts held in appellee's name—Wells Fargo, Chase, State Bank of India, ICICI Bank—with corresponding balances. (Exs. 14, 18A, 18B, 19A, 19B, 20, 21A, 21B.) The balance sheet also showed two 401K retirement accounts owned by appellee—Hewlett Packard and Perspecta. Appellee offered documentation valuing those accounts at $56,283.85 and $64,391, respectively. (Pl.'s Exs. 14, 22, 23.) Appellee testified that he wanted the court to award appellant the entire value of the Perspecta retirement account. The balance sheet also listed $2,000 in household goods (Pl.'s Ex. 14.) Regarding liabilities, the balance sheet identified credit card and healthcare-related debt incurred solely in appellee's name totaling $1,830. (Pl.'s Exs. 14, 24, 25.) Appellee also presented his 2019 and 2020 federal income tax returns. (Pl.'s Exs. 26, 27.) Appellee acknowledged that the balance sheet demonstrated his receipt of $152,951, with appellant receiving $64,391—a difference of $88,560—and that equalization would require appellee to pay appellant $44,280. Appellee requested that the $44,280 be used as an offset to the

property settlement to account for his expenditures for childcare costs, attorney fees, and GAL fees since December 4, 2019.

{¶ 23} Regarding attorney fees, appellee testified that as of the date of the final hearing, he had paid attorney fees totaling $30,215.92 ($17,000 to his former counsel and $13,215.92 to his current counsel), with an additional approximated amount of $3,900 owed to current counsel for trial preparation, attendance at trial, and divorce decree preparation. Appellee averred that appellant's actions during the proceedings increased his attorney fees. Appellee particularly noted appellant's failure to respond to discovery requests which necessitated, among other things, the issuance of subpoenas to obtain pertinent information. Appellee also averred that appellant appeared at only 2 of 13 scheduled hearings—the temporary orders hearing at which she appeared in person, and the hearing on the motion for stay at which she appeared via Zoom. Appellee also testified that appellant's motion to stay the proceedings was predicated upon false information regarding the alleged travel ban. Appellee further testified that he paid $4,300 in GAL fees as of September 2021 and would incur an additional $800 in GAL fees for preparation of the final report and appearance at the hearing.

{¶ 24} The GAL testified at the hearing and submitted her October 29, 2021 report as an exhibit. (GAL Ex. 1.) The GAL averred that when she was appointed on January 31, 2020, appellant had already left for India; as such, she had no opportunity to observe appellant with the children. She further averred that she had observed appellee with the children at home; she opined that appellee had a very strong, loving bond with them.

{¶ 25} The GAL further testified that she spoke with appellant via Skype on at least two occasions. During these conversations, appellant expressed concerns that the children were malnourished and underweight. In response, the GAL asked appellee to demonstrate via Zoom the children's physical appearance and the contents of his refrigerator and pantry. Based on this Zoom interaction, the GAL was satisfied that the children were healthy and well-nourished. The GAL further averred that appellant expressed concern that appellee was abusing the children and sent her a photograph depicting a mark on the nose of one of the children. The GAL immediately contacted appellee, who reported that the mark resulted from the child running into the corner of a wall during playtime; the GAL observed that appellee had installed corner guards in the apartment. The GAL also spoke privately

with the children; both expressed respect for appellee and looked to him for love, direction, and care. Based on her investigation, the GAL found no merit to appellant's allegations.

{¶ 26} The GAL expressed concerns about appellant's behavior, including the shoplifting incident at the mall. The GAL further noted that appellant had often signaled her intention to return to the United States when she could afford to do so; however, she had yet to return. The GAL further averred that "last week was the first time that I heard she had no intention of returning." (Nov. 1, 2021 Tr. at 88.) The GAL recommended that if appellant were to return to the United States, re-evaluation of the custody issue would be necessary; the GAL echoed appellee's concerns about granting appellant parenting time if she was in the United States on only a temporary visa.

{¶ 27} Following conclusion of the GAL's testimony, appellee provided additional testimony. Appellee requested that appellant be awarded only one-half of the value of the Perspecta retirement account, with the balance awarded to him to offset the legal fees he has incurred in defending himself and his family against claims of domestic abuse levied by appellant in India. Appellee also averred that before appellant left for India, he had cameras installed in his home to provide evidence to the police that he was not physically abusing appellant.

{¶ 28} The trial court memorialized its oral ruling denying the continuance in its January 18, 2022 amended judgment entry-decree of divorce. The court found that appellant was not prejudiced by the scheduling of the final hearing on November 1, 2021, as she was represented by counsel at the time of the scheduling, her counsel participated in choosing the date, indicated that the matter was uncontested, and informed the court that appellant would not be in attendance. The court also found unavailing appellant's arguments regarding the trial notebooks and delay in receiving the GAL's report. Specifically, the court found that because appellant's counsel stated at the October 22, 2021 hearing that the matter would be uncontested, there was no need for the GAL to file a report seven days in advance of the November 1, 2021 hearing or for the parties to exchange trial notebooks. In addition, the court rejected appellant's arguments regarding the lack of an amended case management order after the stay was lifted on April 13, 2021. The court noted that the local rule upon which appellant relied placed the onus on her counsel to request a hearing or submit an amended order; counsel had done neither.

{¶ 29} Turning to the substantive issues raised at the final hearing, the court granted appellee a divorce from appellant on grounds of extreme cruelty and adultery and dismissed appellant's counterclaim. The court determined the duration of the marriage to be from May 22, 2013 to December 4, 2019.

{¶ 30} Regarding the division of marital assets and liabilities, the court noted that appellee presented a proposed balance sheet. The court divided the marital assets and liabilities in accordance with the testimony and exhibits provided by appellee at the final hearing. The court ordered that appellant pay the attorney fees incurred by appellee based on appellant's failure to participate in the litigation, failure to provide discovery, and failure to attend hearings. The court further noted that appellant had made multiple false allegations about appellee to the GAL and police that caused delay and expense to appellee. In addition, the court noted that appellee paid all the GAL fees and the costs of raising the children since December 2019. Specifically, the court awarded appellee attorney fees totaling $39,000, consisting of $5,100 in GAL fees and $33,900 in attorney fees. The court found that due to appellant's lack of participation in the proceedings, her residing outside the jurisdiction and in the absence of a child support order, the attorney fees and GAL fees should be offset from the marital balance sheet.

{¶ 31} The court awarded as separate property the real property owned by appellee in India and all four bank accounts. As to the marital property, the court awarded appellant his automobile and associated debt, all credit card and healthcare related debt, the entire balance of the Hewlett Packard retirement account, and $39,000 of the $64,391 value of the Perspecta retirement account. The court awarded the $25,391 balance of the Perspecta retirement account to appellant.

{¶ 32} Regarding the allocation of parental rights and responsibilities, the trial court found, after consideration of the factors set forth in R.C. 3109.04, that appellee should be awarded sole legal custody the parties' minor children. In support of this finding, the court noted that appellee had been the sole caretaker and provider of financial and emotional support for the children following appellant's departure to India in December 2019. The court further noted that the GAL had recommended that appellee be awarded custody of the children. In addition, the court noted appellant's conviction for disorderly conduct.

{¶ 33} Regarding child support, the court found, after consideration of the factors in R.C. 3119.02, that child support owed appellee would be in the sum of $207.28 per month, plus cash medical support of $10.72 and 2 percent processing charge of $4.37, for a total of $223.07 per month. The court further found that a deviation in child support was appropriate based upon appellee's testimony that the cost of living is 71.5 percent lower in India; however, based on the presumption that wages are lower in India, the court accordingly presumed that imputing minimum wage of $18,304 to appellant was unrealistic. The court further noted that appellee's paying for private school and having 100 percent of the financial responsibility for the children would normally substantiate an upward deviation in child support paid to him. However, because appellee received attorney fees paid by appellant through the division of marital assets, the trial court ordered that no child support be paid to appellee.

{¶ 34} Regarding spousal support, the trial court first noted appellee's request that none be awarded to either party. After addressing each of the factors set forth in R.C. 3105.18(C)(1), the trial court found that the evidence did not support an award of spousal support to either party.

{¶ 35} Finally, the court addressed an award of attorney fees under R.C. 3105.73(A). Citing appellee's testimony, the court ordered appellant to pay appellee's attorney fees totaling $39,000, consisting of $5,100 in GAL fees, $17,000 to appellee's former counsel, and $16,900 to appellee's current counsel. The court order that the payment be offset against the division of marital assets.

{¶ 36} Appellant timely appeals, advancing five assignments of error for review:

> [I]. The trial court erred, abused its discretion, and committed reversible error when the judge setting a final trial date failed to give the Defendant sufficient notice and time to travel from India to participate in her divorce trial.
>
> [II]. The trial court erred, abused its discretion, and committed reversible error [when] the judge allowed the Guardian Ad Litem to submit her GAL report one day before the trial, in violation of the Court's own local rule, and violated the Defendant's due process rights.
>
> [III]. The trial court erred, abused its discretion, and committed reversible error when [the court] ordered the

Defendant to pay the Plaintiff's attorney fees from her share of marital assets.

[IV]. The trial court erred, abused its discretion, and committed reversible error when the court granted the Plaintiff full custody of the children.

[V]. The trial court erred, abused its discretion, and committed reversible error when it ordered a division of the marital assets that was not fair and equitable.

{¶ 37} In her first assignment of error, appellant argues that the trial court abused its discretion in failing to grant her motion for continuance of the November 1, 2021 final hearing.[4] Appellant notes that the final hearing was scheduled less than ten days after the October 22, 2021 hearing determining the de facto termination date of the marriage. Appellant maintains that the court was aware that appellant lived in India and was both financially and logistically unable to return to the United States in time for the hearing. Appellant also argues that the trial court should have granted the continuance because, in contravention of the domestic court's local rules, the GAL did not file her report seven days prior to the final hearing and the trial court did not schedule a case management hearing after the stay was lifted. We disagree with appellant's contentions.

{¶ 38} In *State v. Unger*, 67 Ohio St.2d 65 (1981), the Supreme Court of Ohio set forth a non-exhaustive set of factors for a court to consider in evaluating a motion for a continuance: "the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." *Id*. at 67-68. " 'Unger does not suggest that information will always be available about each of these factors or require a court to assign particular weight to any one factor.' " *Pheister v. Pheister*, 10th Dist. No. 19AP-672, 2020-Ohio-3007, ¶ 14, quoting *Musto v. Lorain Cty. Bd. of Revision*, 148 Ohio St.3d 456, 2016-Ohio-8058, ¶ 23.

---

4 Appellant does not challenge the trial court's denial of the oral motion (made by her counsel prior to his withdrawal) to continue the hearing to allow her to obtain other counsel or to prepare for proceeding pro se.

On appeal, "*Unger* requires us 'to apply a balancing test, thereby weighing the trial court's interest in controlling its own docket, including facilitating the efficient dispensation of justice, versus the potential prejudice to the moving party.' " *Pfeister* at ¶ 12, quoting *Fiocca v. Fiocca*, 10th Dist. No. 04AP-962, 2005-Ohio-2199, ¶ 7, citing *Unger* at 67. " 'The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion.' " *Pheister* at ¶ 12, quoting *Unger* at 67.

{¶ 39} Although the trial court did not expressly cite to *Unger*, the trial court implicitly found applicable some of the *Unger* factors. Indeed, the trial court noted that at the October 22, 2021 hearing, appellant's counsel participated in choosing the date of the final hearing, indicated to the court, appellee, and opposing counsel that the matter was uncontested, and that appellant would not attend the hearing. Preliminarily, we note that " 'a client is bound by the acts of his attorney.' " *Cichanowicz v. Cichanowicz*, 3d Dist. No. 3-13-05, 2013-Ohio-5657, ¶ 68, quoting *Thirion v. Neumann*, 11th Dist. No. 2004-A-0032, 2005-Ohio-1814, ¶ 17. Moreover, the reasons set forth by the trial court arguably demonstrate that it considered the inconvenience to the court as well as to appellee, the GAL, and appellee's counsel (all of whom were present and prepared for the hearing); that the requested delay was purposeful; that appellant contributed to the circumstance giving rise to the requested continuance; and that other factors unique to the case were present. Based on these factors, the court found disingenuous appellant's argument regarding her alleged financial and logistical inability to attend the final hearing.

{¶ 40} In addition, at the time of the hearing, the action had been pending for over two years; appellant left the country shortly after appellee initiated the proceedings and never returned. Further, appellant provided no indication as to when, or even if, she planned to return to the United States, nor did she provide any indication of her availability to attend future Zoom hearings if such were scheduled. We further note appellant's troublesome behavior over the course of the proceedings, including her failure to attend numerous scheduled hearings, either in person or via Zoom, her failure to comply with discovery requests, and her obtaining the stay under false pretenses. Under the circumstances of this case, the trial court's refusal to continue the final hearing based upon appellant's purposed inability to attend does not amount to an abuse of discretion.

{¶ 41} Appellant also contends that the trial court erred when it did not continue the hearing because the GAL did not comply with Loc.R. 15(I)(1) of the Franklin County Court of Common Pleas, Division of Domestic Relations ("Loc.R.") when she filed her report less than seven days prior to the hearing date.

{¶ 42} Preliminarily, we note that appellant's citation to Loc.R. 15(I)(1) is inaccurate. That rule stated, in relevant part: "In domestic relations proceedings involving the allocation of parental rights and responsibilities, the final report shall be filed with the court and made available to the parties for inspection no less than seven days before the final hearing unless the due date is extended by the court." However, on October 1, 2021, the domestic relations court amended its local rule governing the filing of the final GAL report. Loc.R. 15(L), which was in effect at the time the GAL filed her written report in this case, provides in relevant part:

> (L) Reports and Court Appearances
>
> A guardian ad litem shall prepare a written final report that complies with the requirements of Sup.R. 48.06 as to content, the time with which it shall be filed, and to whom it shall be provided.

{¶ 43} Unlike the previous iteration of the rule, Loc.R. 15(L) links the timing requirement for filing the final GAL report to Sup.R. 48.06(C)(1), which provides in part:

> (C) Guardian ad litem reports in allocation of parental rights and responsibilities cases
>
> (1) A guardian ad litem in proceedings involving the allocation of parental rights and responsibilities, custody, and visitation shall provide a report to the court, unrepresented parties, and legal counsel not less than seven days before the final hearing date, unless the due date is modified by the court.

{¶ 44} This court and other Ohio appellate courts have held that the rules of superintendence are merely guidelines and do not have the force and effect of statutory law. *In re S.S.*, 10th Dist. No. 17AP-681, 2018-Ohio-1249, ¶ 11 ("Rules of Superintendence are only internal housekeeping rules that do not create substantive rights in individuals or procedural law, and they do not have the force of law."); *Lucas v. Byers*, 11th Dist. No. 2020-L-010, 2021-Ohio-246, ¶ 71 ("Rules of Superintendence are not the equivalent of rules of procedure and have no force equivalent to a statute. They are purely internal housekeeping

rules which are of concern to the judges of the several courts but create no rights in individual defendants.") (Internal quotations omitted.); *Ackley v. Haney*, 12th Dist. No. CA2021-07-017, 2022-Ohio-2382, ¶ 26 ("Rules of Superintendence do not have the same force as statute or case law, but are rather purely internal housekeeping rules which do not create substantive rights in individuals or procedural law."). Thus, noncompliance with such a rule is generally not grounds for reversal. *Id.*, citing *In re B.J.*, 12th Dist. No. CA2016-05-036, 2016-Ohio-7440, ¶ 57.

{¶ 45} Pursuant to the foregoing case law, the timing requirement set forth in Sup.R. 48.06(C)(1) does not create a substantive right in appellant and does not have the force of law; accordingly, the trial court's refusal to continue the hearing based upon the GAL's filing of the final report less than seven days prior to the hearing date does not constitute an abuse of discretion.

{¶ 46} Appellant's final argument focuses on the trial court's alleged error in failing to comply with Loc.R. 15(E)(2) which, according to appellant, required the trial court to schedule a case management hearing after the stay was lifted. That rule provides in part that "[w]hen the stay is lifted, *trial counsel* shall schedule a case management hearing." (Emphasis added.) *Id.* As the trial court recognized, the rule placed the burden on appellant's counsel to schedule a case management hearing after the stay was lifted and counsel failed to do so. There was no abuse of discretion in the trial court's denial of the motion to continue the hearing based upon appellant's failure to comply with the local rule.

{¶ 47} The first assignment of error is overruled.

{¶ 48} In her second assignment of error, appellant contends that the trial court erred by allowing the GAL to submit her final report less than seven days prior to the hearing date. Appellant maintains that the late filing precluded her from assembling evidence or witnesses to rebut, explain, or otherwise challenge the statements contained in the GAL report.

{¶ 49} Appellant again premises her timeliness argument on Loc.R. 15(I)(1) which, as we discussed in our resolution of the first assignment of error, does not apply to this case. As we further noted, the applicable rule, Loc.R. 15(L), defers to Sup.R. 48.06(C)(1), which requires the GAL to provide the final written report "not less than seven days before the final hearing date, *unless the due date is modified by the court*." (Emphasis added.) We

have already determined, based on case law from this court and others, that Sup.R. 48.06(C)(1) does not create a substantive right in appellant and does not have the force of law. *S.S.,* 10th Dist. No. 17AP-681, 2018-Ohio-1249, ¶ 11; *Lucas,* 11th Dist. No. 2020-L-10, 2021-Ohio-246, ¶ 71. Thus, the seven-day requirement is not mandatory. Moreover, even if it were mandatory, Sup.R. 48.06(C)(1) permits a trial court to modify the due date. Here, the trial court clearly modified the due date for filing the GAL report based upon the circumstances of the case. Indeed, the trial court found that because appellant's counsel indicated at the October 22, 2021 hearing that the matter would be uncontested, there was no need for the GAL to file the final report seven days in advance of the November 1, 2021 hearing.

{¶ 50} Moreover, we note the GAL's testimony (offered on the continuance issue) that her position on the custody issue was known to appellant for over one year and thus should not have been a surprise to her. In addition, appellant fails to provide any indication as to what evidence or witnesses she could assemble to rebut, explain, or otherwise challenge the statements contained in the GAL report. For these reasons, we cannot find that the trial court abused its discretion in allowing the GAL to file her final report less than seven days prior to the final hearing.

{¶ 51} The second assignment of error is overruled.

{¶ 52} In her third assignment of error, appellant asserts that the trial court abused its discretion in ordering her to pay appellee's attorney fees from her share of the marital assets. Appellant's entire argument under this assignment of error consists of the following four sentences:

> It is undisputed that the [appellant] was unemployed during the marriage and was a housewife while supporting her husband's career. [Appellant] became homeless after the [appellee] filed for divorce. She lived in a homeless shelter before flying home to India. It was an abuse of discretion for the court to order an indigent spouse to pay the attorney fees of a spouse that has the means to pay his attorney fees.

(Appellant's brief at 12.)

{¶ 53} In *Isreal v. Franklin Cty. Commrs.*, 10th Dist. No. 21AP-131, 2022-Ohio-1825, this court recently addressed the rules applicable to the filing of appellate briefs:

> "The Rules of Appellate Procedure provide requirements for an appellant filing a brief before an appellate court." *JPMorgan Chase Bank, N.A. v. Cloyes*, 10th Dist. No. 20AP-107, 2021-Ohio-3316, ¶ 10. "In addition to requiring an appellant to include assignments of error in their brief, App.R. 16 imposes several other requirements on an appellant's brief." *Id.* at ¶ 11. For example, App.R. 16(A)(7) requires appellant's merit brief contain the following:
>
> > An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary.
>
> "Pursuant to App.R. 16(A)(7), an appellant must present his or her contentions with respect to each assignment of error presented for review and the reasons in support of those contentions, including citations to legal authorities." *Lundeen v. State Med. Bd. of Ohio*, 10th Dist. No. 12AP-629, 2013-Ohio-112, ¶ 16. App.R. 12(A)(2) permits this court to disregard an assignment of error if an appellant fails to cite to any legal authority in support of an argument as required by App.R. 16(A)(7). *See, e.g., In re C.C.*, 10th Dist. No. 04AP-883, 2005-Ohio-5163, ¶ 80; *Hall v. Tucker*, 161 Ohio App.3d 245, 263, 2005-Ohio-2674, 829 N.E.2d 1259 (4th Dist.); *State v. Martin*, 12th Dist. No. CA99-01-003, 1999 Ohio App. LEXIS 3266 (July 12, 1999); *Meerhoff v. Huntington Mtge. Co.*, 103 Ohio App.3d 164, 169, 658 N.E.2d 1109 (3d Dist.1995).

*Id.* at ¶ 15-16.

{¶ 54} Here, appellant fails to cite to any legal authority in support of either prong of her argument, i.e., (1) that due to her alleged dire economic circumstances, the trial court should not have ordered her to pay appellee's attorney fees, and (2) that the attorney fees award could not be paid from her share of the marital assets.

{¶ 55} As we stated in *Isreal*:

> This court has consistently held that "[t]he burden of affirmatively demonstrating error on appeal rests with the party asserting error." *Lundeen* at ¶ 16, citing *State ex rel. Petro v. Gold*, 166 Ohio App.3d 371, 392, 2006-Ohio-943, 850 N.E.2d 1218 (10th Dist.), citing App.R. 9; App.R. 16. Accordingly, " '[i]t is the duty of the appellant, not the appellate

court, to construct the legal arguments necessary to support the appellant's assignments of error.' " *Lamb v. Reynoldsburg Civ. Serv. Comm.*, 10th Dist. No. 19AP-864, 2021-Ohio-2322, ¶ 31, quoting *Bond v. Village of Canal Winchester*, 10th Dist. No. 07AP-556, 2008-Ohio-945, ¶ 16, citing *Whitehall v. Ruckman*, 10th Dist. No. 07AP-445, 2007-Ohio-6780, ¶ 20. "If an argument exists that can support [an] assignment of error, it is not [an appellate] court's duty to root it out." (Additional citations and quotations omitted.) *Lamb* at ¶ 31.

" '[F]ailure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal.' "*Lundeen* at ¶ 16, quoting *Kremer* at 60.

*Id.* at ¶ 19.

{¶ 56} Because appellant has failed to provide this court with any legal authority to support the conclusion that the trial court abused its discretion in ordering appellant to pay appellee's attorney fees from her share of the marital estate, this court could summarily overrule appellant's assignment of error. However, in the interest of justice, we will address appellant's argument.

{¶ 57} Preliminarily, we note that appellant failed to object to any aspect of appellee's attorney fees testimony, including the amount or reasonableness of the fees and/or his request that the fees be paid from appellant's share of the marital property. As noted above, the matter was uncontested and appellant dismissed her attorney prior to the presentation of evidence. Because appellant failed to object to appellee's testimony, we limit our review to whether the alleged error rises to the level of plain error.

{¶ 58} "In civil cases, courts apply the doctrine of plain error 'with the utmost caution.' " *Marshall v. Marshall*, 10th Dist. No. 18AP-543, 2019-Ohio-684, ¶ 8, quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121 (1997). Courts find plain error " 'only in the extremely rare case involving exceptional circumstances where error * * * seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.' " *Id.*, quoting *Goldfuss* at syllabus.

{¶ 59} R.C. 3105.73(A) governs the award of attorney fees in a divorce action and provides "a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable." Guardian ad litem fees, expert fees, and attorney fees are "litigation expenses" under R.C. 3105.73. *Hill v. French*, 6th Dist. No.

L-20-77, 2021-Ohio-24, ¶ 65; *Buckingham v. Buckingham*, 2d Dist. No. 2017-CA-31, 2018-Ohio-2039, ¶ 82; *Burke v. Burke*, 8th Dist. No. 101059, 2014-Ohio-5279, ¶ 17. In assessing whether an award of attorney fees is proper, "the court may consider the parties' marital assets and income, any award of spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." R.C. 3105.73(A). "A party is not entitled to attorney fees; rather, the court may decide on a case-by-case basis whether attorney fees would be equitable." *Galloway v. Khan*, 10th Dist. No. 06AP-140, 2006-Ohio-6637, ¶ 35, citing *Ockunzzi v. Ockunzzi*, 8th Dist. No. 86785, 2006-Ohio-5741, ¶ 71.

{¶ 60} A trial court may rely on its own knowledge and experience in determining the necessity and reasonableness of attorney fees. *Long v. Long*, 10th Dist. No 11AP-510, 2012-Ohio-6254, ¶ 20, citing *McCord v. McCord*, 10th Dist. No. 06AP-102, 2007-Ohio-164, ¶ 18, citing *Groza-Vance v. Vance*, 162 Ohio App.3d 510, 2005-Ohio-3815, ¶ 44 (10th Dist.) Further, a trial court is not required to hear expert testimony to determine the reasonableness of the amount of attorney fees claimed. *Id.* A trial court's decision to award attorney fees in a divorce action is reviewed for an abuse of discretion. *Galloway* at ¶ 35, citing *Ockunzzi* at ¶ 71.

{¶ 61} Here, the trial court stated that it weighed the evidence and testimony adduced at trial and considered the R.C. 3105.73 factors and totality of the circumstances in this case in finding it "fair and equitable" that appellant pay appellee $39,000 for attorney fees and GAL fees and that such amount be deducted from appellant's share of the marital estate. (Am. Jgmt. Entry—Decree of Divorce at 23.) The trial court's decision focused primarily on appellant's conduct during the litigation. The court noted that appellant had failed to appear at numerous hearings, had not cooperated or complied with discovery (which resulted in appellee issuing subpoenas to obtain evidence), had repeatedly made false allegations/accusations against appellee to both police and the GAL, sought a stay of the matter based upon inaccurate information regarding her inability to travel from India, and filed multiple motions in an effort to delay the matter from moving forward.

{¶ 62} Upon review of the record, we find no error in the trial court's analysis or conclusion on the issue. The trial court was in the best position to assess the impact of appellant's conduct on the case and the extent to which her conduct disrupted or delayed the matter. *Long* at ¶ 16. " 'Conduct supporting an award of attorney's fees may include

* * * actions that unnecessarily prolong the proceedings.' " (Further citations omitted.) *Id.*, quoting *Sullivan v. Sullivan*, 6th Dist. No. L-09-1022, 2010-Ohio-3064, ¶ 66. " ' "Because a court addresses an award of attorney fees through equitable considerations, a trial court properly can consider the entire spectrum of a party's actions, so long as those actions impinge upon the course of the litigation." ' " *Chawla v. Chawla*, 10th Dist. No. 13AP-399, 2014-Ohio-1188, ¶ 52, quoting *Wehrle v. Wehrle*, 10th Dist. No. 12AP-386, 2013-Ohio-81, ¶ 50, quoting *Padgett v. Padgett*, 10th Dist. No. 08AP-269, 2008-Ohio-6815, ¶ 17.

{¶ 63} As required by R.C. 3105.73, the trial court considered whether an award of attorney fees to appellee from appellant's share of the marital estate would be equitable. In its discretion, it concluded that it was. Other than being dissatisfied with the trial court's ruling, appellant does not direct us to, nor do we find any error, plain or otherwise, in the trial court's determination.

{¶ 64} The third assignment of error is overruled.

{¶ 65} Under her fourth assignment of error, appellant contends the trial court abused its discretion in awarding appellee full custody of the parties' two minor children. Appellant's entire argument under this assignment of error consists of the following three sentences:

> Because the GAL's report was not filed until October 29, 2021, [appellant] was not given adequate time to assemble evidence or witnesses to rebut, explain, or otherwise challenge statements contained within the GAL's report at the November 1, 2021, hearing. Therefore, [appellant] should have been provided with the opportunity to present such evidence and witnesses at the November 1, 2021, hearing. The court abused [its] discretion and committed reversible error when it awarded [appellee] full custody of the minor children.

(Appellant's brief at 12.)

{¶ 66} Appellant again fails to provide this court with any legal authority to support her argument. Pursuant to *Isreal*, 10th Dist. No. 21AP-131, 2022-Ohio-1825, this court could summarily overrule appellant's assignment of error. *Id.* at ¶ 15-16, 19. Again, in the interest of justice, we will consider appellant's argument.

{¶ 67} At the outset, we note that the first two sentences of appellant's argument essentially repackage the contentions raised in the first and second assignments of error regarding the alleged untimeliness of the GAL's report and its alleged impact on her ability

to respond to the statements included therein. In resolving those assignments of error, we found no merit to appellant's arguments, and we decline to reiterate our analysis here.

{¶ 68} Turning to the final sentence of appellant's argument, i.e., that the trial court erred in awarding appellee full custody of the children, we first note that appellant failed to object to the admission of the GAL's report or to the testimony provided by the GAL and appellee regarding the custody issue. We again note that the matter was uncontested and appellant dismissed her attorney prior to the presentation of evidence. Because appellant failed to object to the evidence addressing custody, we limit our review to whether the trial court's alleged error in granting appellee custody of the children rises to the level of plain error.

{¶ 69} R.C. 3109.04 governs the allocation of parental rights and responsibilities and sets forth the procedures and standards courts are to use in proceedings pertaining to such matters. *In re A.G.*, 139 Ohio St.3d 572, 579, 2014-Ohio-2597, ¶ 41. R.C. 3109.04(B)(1) requires a trial court to take into account the best interests of the children when allocating parental rights and responsibilities for the care of the children in an original proceeding. The trial court must consider all relevant factors related to the children's best interest, including those factors specified in R.C. 3109.04(F)(1)(a) through (j). *Rankin v. Rankin*, 10th Dist. No. 20AP-223, 2021-Ohio-1967, ¶ 28. " 'A trial court must follow R.C. 3109.04 when deciding child custody matters but it has broad discretion when determining what is the appropriate allocation of parental rights and responsibilities.' " *Id.* at ¶ 27, quoting *Pallone v. Pallone*, 10th Dist. No. 17AP-409, 2017-Ohio-9324, ¶ 36, citing *Parker v. Parker*, 10th Dist. No. 05AP-1171, 2006-Ohio-4110, ¶ 23. An appellate court reviews a trial court's determination of the best interest of a child for an abuse of discretion. *Smarrella v. Smarrella*, 7th Dist. No. 14 JE 18, 2015-Ohio-837, ¶ 11, citing *Brown v. Brown,* 2d Dist. No. 2012-CA-40, 2013-Ohio-3456, ¶ 12. In conducting such review, we are mindful that " '[c]ustody determinations are some of the most difficult and agonizing decisions a trial judge must make, and, therefore, appellate courts must grant wide latitude to a trial court consideration of the evidence." *Id.* at ¶ 12, quoting *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997).

{¶ 70} Here, the trial court expressly stated that it considered the statutory factors outlined in R.C. 3109.04 in awarding sole legal custody of the children to appellee. The

court noted that appellee has been the sole caretaker and provider of financial and emotional support for the children following appellant's move to India in December 2019. More specifically, the court noted that appellee has provided the children appropriate nutrition, shelter, clothing, education, medical care, and health insurance. As for appellant, the court noted that she has had no personal contact with the children since she left for India. The court also noted the circumstances surrounding appellant's conviction for disorderly conduct, i.e., that she committed the crime in the children's presence. The court further noted appellee's testimony that when appellant visited India with the children prior to the commencement of the current litigation, the children suffered from malnutrition and had to receive medical treatment on two occasions.

{¶ 71} Upon review of the record, we find no error in the trial court's analysis or conclusion as to the allocation of parental rights and responsibilities. As required by R.C. 3109.04, the trial court considered the best interest of the children in concluding that appellee should be awarded full custody of the children. Again, other than being dissatisfied with the trial court's ruling, appellant does not direct us to, nor do we find any error, plain or otherwise, in the trial court's determination.

{¶ 72} The fourth assignment of error is overruled.

{¶ 73} In her fifth and final assignment of error, appellant contends that the trial court abused its discretion in dividing the marital assets. Appellant first maintains that the trial court erred in issuing one judgment entry encompassing both the division of marital property and the issue of spousal support. Appellant suggests that the trial court was required to issue a separate judgment entry for each issue. Appellant references *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 130 (1989), but only for the proposition that a trial court must divide the marital property before considering the issue of spousal support. Appellant does not intimate that *Holcomb* supports her separate judgment entry theory, nor does she provide any other legal authority substantiating her position. We cannot find that the trial court abused its discretion in issuing one judgment entry encompassing both the division of marital property and the spousal support issue.[5]

{¶ 74} Appellant next claims that the trial court's division of marital property was unfair and inequitable. Appellant offers no specific argument in support of her broad claim.

---

[5] Appellant does not challenge the trial court's decision not to award spousal support to either party.

Pursuant to *Isreal*, 10th Dist. No. 21AP-131, 2022-Ohio-1825, this court could summarily overrule appellant's assignment of error. *Id*. at ¶ 15-16, 19. Again, in the interest of justice, we will consider appellant's argument as we understand it.

**{¶ 75}** At the outset, we note that appellant failed to object to appellee's testimony and documentary evidence concerning the parties' marital and separate property. Once again, we note that the matter was uncontested and appellant fired her attorney prior to the presentation of evidence. Because appellant failed to object to the evidence presented as to the division of property, we limit our review to whether the trial court's alleged error in dividing the marital and separate property rises to the level of plain error.

**{¶ 76}** A trial court must divide the marital and separate property equitably between the spouses, after determining what constitutes marital and separate property. R.C. 3105.171(B). Additionally, the court must divide the marital property equally unless an equal division would be inequitable. R.C. 3105.171(C). " '[E]quitable does not necessarily mean equal.' " *Beagle v. Beagle*, 10th Dist. No. 07AP-494, 2008-Ohio-764, ¶ 37, quoting *Ellars v. Ellars*, 69 Ohio App.3d 712, 720 (10th Dist.1990). "There is no presumption or requirement that marital property be divided equally." *Id*., citing *Booth v. Booth*, 44 Ohio St.3d 142, 144-45 (1989). "Rather, a potentially equal division is merely the starting point of the trial court's analysis before it considers other factors." *Id*., citing *Booth*. "Ultimately, '[t]he facts and circumstances of each case dictate what is an equitable division of marital property.' " *Id*., quoting *Apps v. Apps*, 10th Dist. No. 02AP-1072, 2003-Ohio-7154, ¶ 37. A domestic relations court has broad discretion in fashioning a division of marital property, and its decision will not be reversed absent an abuse of that discretion. *Id*. at ¶ 38, citing *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 95 (1988).

**{¶ 77}** The trial court must make written findings of fact to support its determination that the marital property has been equitably divided. R.C. 3105.171(G); *Galloway*, 10th Dist. No. 06AP-140, 2006-Ohio-6637, ¶ 8. Specifically, R.C. 3105.171(G) requires that, "[i]n any order for the division * * * of property * * * made pursuant to this section, the court shall make written findings of fact that support the determination that the marital property has been equitably divided." Thus, "although a trial court has broad discretion in deciding what division of marital property is equitable under the facts and

circumstances of the case, the trial court must make findings of fact to support the division of marital property as being equitable." *Beagle* at ¶ 39.

{¶ 78} Pursuant to R.C. 3105.171(C), when dividing marital property, the trial court must consider all relevant factors, including those outlined in R.C. 3105.171(F). While the trial court need not itemize every factor set forth in R.C. 3105.171(F), the court's decision must clearly indicate that the factors were considered before the property division was made. *Id.* at ¶ 40, citing *Hightower v. Hightower*, 10th Dist. No. 02AP-37, 2002-Ohio-5488, ¶ 21, citing *Casper v. DeFrancisco*, 10th Dist. No. 01AP-604, 2002-Ohio-623.

{¶ 79} The trial court found that it had no jurisdiction to divide the real property owned by appellee in India and thus concluded it constituted separate property. As to the bank accounts, the court found that the Wells Fargo and Chase accounts contained both separate and marital funds; the State Bank of India and ICICI accounts contained only separate funds owned by appellee. The court awarded appellee all the bank accounts. The court also awarded appellee his automobile and associated debt, all his credit card and healthcare related debt, the entire balance of the Hewlett Packard retirement account, and $39,000 of the $64,391 value of the Perspecta retirement account. The court awarded the $25,391 balance of the Perspecta retirement account to appellant.

{¶ 80} The court stated that "the disproportionate award of liquid marital assets is appropriate due to the deduction of the attorney fees ordered to be paid to the [appellee] and deduction for the guardian ad litem fees paid by the [appellee], and [appellee] solely having the burden of caring for the minor children for the past two (2) years. Additionally, [appellee] has to incur costs in dealing with litigation in India based on [appellant's] accusations of domestic abuse, which based on the testimony of [appellee] and the police reports and what was seen on the home video cameras, appear to be false allegations." (Am. Jgmt. Entry—Decree of Divorce at 13.)

{¶ 81} While the trial court did not specifically cite to R.C. 3105.171, it is clear from the court's written findings that it considered the applicable provisions of the statute, including R.C. 3105.171(B), (C), and (F). Appellant does not direct this court to any specific error made by the trial court in dividing the marital property; rather, appellant only broadly claims that the division was unfair and inequitable. Upon review of the record, we find no error, plain or otherwise, in the trial court's determination.

{¶ 82} The fifth assignment of error is overruled.

{¶ 83} Having overruled appellant's five assignments of error, we hereby affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.

*Judgment affirmed.*

DORRIAN and McGRATH, JJ., concur.

_____